OPINION OF THE COURT
Lawrence E. Kahn, J.
This is a CPLR article 78 proceeding, originally initiated by Center Square Association, Inc., which seeks to annul the determination of the Environmental Quality Review Board of the City of Albany, that the proposed demolition of 116 Washington Avenue, Albany, New York, has no significant impact upon the environment and thus, the preparation of an environmental impact statement is not required pursuant to ECL 8-0109. By way of order to show cause signed and served on July 17, 1980, the Council of Albany Neighborhood Associations and Harold Rubin, both seek to intervene in this proceeding. By way of notice of motion to intervene dated July 16, 1980 and returnable July 18, 1980, Rezsin Adams also seeks permission to intervene as a party petitioner.
The Center Square Association, Inc., was incorporated in 1974, and according to its certificate of incorporation and by-laws, one of its purposes is to “Aid, assist and foster the planning, replanning, renewal, redevelopment and improvement of housing conditions principally in the Center Square area of Albany”. The Council of Albany Neighborhood Associations is a city-wide federation of active neighborhood groups. Harold Rubin is a homeowner residing at 156 Chestnut Street, in the City of Albany and chairman of the Council of Albany Neighborhood Associations. Rezsin *8 Adams is a homeowner residing at 112 Chestnut Street in the City of Albany. Respondent, Erastus Corning, is the Mayor of the City of Albany, a member of the respondent, Fort Orange Club and chairman of the Environmental Quality Review Board of the City of Albany. Respondents, James Giblin, John Roe, Richard Patrick and David Riker constitute the remaining membership of said board. Respondent, Fort Orange Club, is a not-for-profit corporation which is the owner of the premises in question, and which seeks its demolition for purposes of a parking lot.
On June 17, 1980, the city’s Environmental Quality Review Board, by a vote of 3 to 2, found that the proposed demolition of 116 Washington Avenue would not have a significant effect on the environment, and that the commissioner of buildings be authorized to issue a demolition permit for the work. Voting in favor thereof were respondents, Erastus Corning, James Giblin and John Roe. Opposed thereto were respondents, Richard Patrick and David Riker. This matter was originally reviewed and discussed at the May 20, 1980 meeting of the board when the long form environmental assessment application was submitted by Fort Orange Club, and testimony of various members of the public was taken. The only “hard evidence” presented was a report on the history and architectural significance of 116 Washington Avenue, prepared by the Albany Urban Renewal Agency, along with correspondence from the president of the New Scotland Whitehall Neighborhood Association and the Council of Albany Neighborhood Associations.
The minutes of the May 20th meeting establish that all those speaking thereat asserted that the proposed demolition would have a significant effect on the area surrounding 116 Washington Avenue. Indeed, respondent Riker indicated that the State historian had indicated that the building would meet the criteria for listing on the Historic Register, and that the Department of Interior had concurred in this opinion. The Urban Renewal Agency’s report entitled “116 Washington Avenue History and Architectural Significance” states at page 4 thereof that “This building is an important component of the entire output of each architect (referring to noted architects, Walter H. Van Guysling and Charles Ogden) * * * Number 116 Washing *9 ton Avenue may be the most significant example of the arts and crafts style of architecture in downtown Albany.” Included therein were pictures of the architectural details of the building along with an analysis of its history and architectural significance. However, respondent Corning, et al.’s answer at paragraph 13 asserts that “The action for which a permit was sought and whose environmental significance determined was a simple one, not requiring extensive explanation”. As previously noted, thereafter, the determination of no significance was made by a vote of 3 to 2.
The issues to be determined herein are as follows :
1) Whether the motion on behalf of the Council of Albany Neighborhood Associations and Harold Rubin to intervene herein shall be granted.
2) Whether the motion by Rezsin Adams to intervene herein shall be granted.
3) Whether the petitioner and proposed intervenors have the requisite standing to maintain the instant proceeding.
4) Whether the action by the Environmental Quality Review Board in the finding of no significant environmental impact, thus obviating the need for an environmental impact statement, was arbitrary and capricious.
5) Whether the membership of the chairman of respondent board in the Fort Orange Club constituted a conflict of interest in violation of section 809 of the General Municipal Law.
Initially, the motion of Rezsin Adams to intervene in this proceeding shall be denied as untimely (see CPLR 2214, subd [b]). The motion of the Council of Neighborhood Associations and Harold Rubin to intervene herein shall be granted. Proper service having been made upon respondents, intervention is permitted in an article 78 proceeding (see Matter of Howard v Diamond, 76 Misc 2d 809) and is governed by the provisions of CPLR 7802 subd [d]) (see Matter of Unitarian Universal Church of Cent. Nassau v Shorten, 64 Misc 2d 851). Proposed intervenors Rubin and the council are interested parties within the meaning of CPLR 7802 (subd [d]). Their papers in *10 support of the relief requested clearly establish an interest in the ongoing proceeding. They allege that the demolition of the premises at 116 Washington Avenue will affect Mr. Rubin’s rights as a property owner in the nearby vicinity, and that the residential nature and quality of life in his neighborhood will also be affected. Having allowed said intervention, this court now turns to the issue of the standing of the association, the council, and Mr. Rubin to maintain this proceeding.
In determining the issue of standing, this court must decide whether the “association qualifies as a bona fide representative of those residents and property owners whose property may be affected by the grant” (Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1, 8). In Douglaston (supra, p 6) the court, while specifically dealing with the issue of the standing of an association in zoning cases, made favorable reference to the broadening rules of standing in related fields. Having reviewed the affidavits of the association and the council, this court is of the opinion that they have the capacity to assume an adversary position, that they reflect the position fairly representative of the community or interest which they seek to protect, and that the adverse effect of the decision which they seek to review is within the zone of interest which they seek to protect. Accordingly, this court finds that sufficient standing has been established to allow the maintenance of this article 78 proceeding.
At the hub of the controversy herein, is petitioner’s respective allegations that the determinations of the1 board that the demolition would not have a significant effect on the environment, was arbitrary and capricious. In determining whether the issuance of the demolition permit to respondent, Fort Orange Club, was arbitrary and. capricious and an abuse of discretion,, said administrative determination is subject to judicial review pursuant to CPLR 7803 (subd 3). The often difficult balancing of progress and property rights with the preservation of our historic environment is not a judicial function, and is properly left to the administrative agencies specially created for that purpose. This court is therefore cognizant of the fact that it may not substitute its judgment for that of the Environ *11 mental Quality Review Board unless the decision under review is patently arbitrary and unreasonable, and constitutes an abuse of discretion (Matter of Diocese of Rochester v Planning Bd. of Town of Brighton, 1 NY2d 508). This standard has been interpreted to mean a willful and unreasoning action without consideration of or in disregard of the facts (Matter of Elwood Investors Co. v Behme, 79 Misc 2d 910), or a determination without a factual basis (Matter of Highland Brooks Apts. Inc. v White, 40 AD2d 178).
Pursuant to ECL 8-0109, municipalities must require an environmental impact statement to be prepared on any action proposed which may have a significant effect on the environment. While much discussion has taken place in this proceeding as to whether the proposed demolition is a “Type 1” action pursuant to 6 NYCRR 617.12, or is an “unlisted action”, this court, for the purposes hereof, need not determine that issue, in that 6 NYCRR 617.11 (a) provides that “In order to determine whether a proposed Type 1 or unlisted action may have a significant effect on the environment, the impacts which may be reasonably expected to result from the proposed action must be compared against the criteria in this section”. (Emphasis supplied.) Among those criterion are “the impairment of the character or quality of important historical, archaeological, architectural or aesthetic resources or existing community or neighborhood character” (6 NYCRR 617.11 [a] [5]).
It should be emphasized that the key word in the Environmental Conservation Law which can trigger the requirements of an environmental impact statement is the word “may”. At issue is not whether the demolition of 116 Washington Avenue will have a significant effect on the environment, but only, whether, in determining that issue, an environmental impact statement should have been required by the Environmental Quality Review Board. In order to uphold said determination, “the record must show that [the board] identified the relevant areas of environmental concern, took a ‘hard look’ at them [citing cases] and made a ‘reasoned elaboration’ of the basis for its determination” (H.O.M.E.S. v New York State Urban Dev. Corp., 69 AD2d 222, 232). As stated therein, “ [i]n a case of this sort, *12 'there is a relatively low threshold for impact statements’ [citing cases] and 'such a statement should be required where the action may fairly be said to have a potentially significant adverse effect’ ” (H.O.M.E.S. v New York State Urban Dev. Corp., supra, p 232).
In the case at bar, the required analysis was not forthcoming. The only documentary evidence presented to the board is directly contrary to their findings. As noted above, the Albany Urban Renewal Agency found that the premises may be “The most significant example of the arts and crafts style of architecture in downtown Albany.” Further, municipal respondents admit that they view the action for the permit as “A simple one not requiring extensive explanation.” Yet, there was not one shred of evidence placed before the board to support its determination. Accordingly, pursuant to the rationale enunciated in H.O.M.E.S., this court finds that the board’s issuance of the permit for the demolition of 116 Washington Avenue was done in an arbitrary and capricious manner and in violation of the mandates of the Environmental Conservation Law and the regulations promulgated pursuant thereto.
Petitioner herein has also asserted that the membership of the chairman of the respondent board in the Fort Orange Club constitutes a conflict of interest in violation of section 809 of the General Municipal Law. In support thereof, they cite Matter of Tuxedo Conservation & Taxpayers Assn. v Town Board of Town of Tuxedo (96 Misc 2d 1). That case, in discussing a conflict of interest by a member of a zoning committee held that (supra, p 10): “ ‘public officers impressed with the duty of conducting a fair and impartial fact-finding hearing upon issues significantly affecting individual property rights as well as community interests, must so far as practicable * * * be open minded, objective, impartial and free of entangling influences of the taint thereof * * * They must be capable of hearing the weak voices as well as the strong. To permit otherwise would impair the requisite public confidence in the integrity of the planning commission and its hearing procedures’ * * * ‘It is axiomatic that, whenever the law requires a hearing of any sort as a condition precedent to the power to proceed, it means a fair hearing, a hearing not *13 only fair in substance, but fair in appearance as well.’ ” While this court agrees with the rationale as enunciated in Tuxedo, the facts therein differ from the facts in the case at bar. Therein, the board member who should have disqualified himself from voting had an apparent pecuniary interest in the proceedings before the board. It is not argued in the case herein, that respondent, Erastus Corning, has any pecuniary interest in the proceeding, but only that he is a member of the Fort Orange Club which seeks the relief requested from the board of which he is the chairman. While this situation may create, in the minds of some, the appearance of impropriety or the granting of special consideration, the statute in question does not prohibit this relationship and thus, is not a bar to the chairman continuing to act as such.
. Accordingly, for the reasons hereinbefore set forth, the relief requested shall be granted. Order to be submitted, on notice, by attorneys for Center Square Association, Inc.