In the Matter of RYE TOWN/KING CIVIC ASSOCIATION et al., Appellants, v TOWN OF RYE, Respondent. ATRIUM ASSOCIATES, Intervenor-Respondent.

Second Department, August 24, 1981

## APPEARANCES OF COUNSEL

*Neale & Wilson (J. Henry Neale, Jr.,* of counsel), for appellants.

*Milton Berner, Town Attorney,* for respondent, and *Mc-Carthy, Fingar, Donovan, Glatthaar, Drazen & Smith (Daniel G. Donovan* of counsel), for intervenor-respondent. (One brief.)

*Robert Abrams, Attorney-General (Shirley Adelson Siegel, James A. Sevinsky* and *Catherine R. McCabe* of counsel), for Robert F. Flacke, Commissioner of Environmental Conservation of the State of New York, *amicus curiae.*

## OPINION OF THE COURT

WEINSTEIN, J.

The essence of this litigation is a challenge to a determination of the Town Board of the Town of Rye, granting a permit to respondent Atrium Associates (hereafter

Atrium) for construction of an office building on a plot consisting of some 17.8 acres of land.

In 1973 the Town of Rye amended its zoning ordinance to provide for "Planned Unit Development" districts (PUD's), or districts wherein certain regulations providing for planned, mixed development would be applied. The plot of land involved herein is part of the first PUD established pursuant to the ordinance; indeed, this PUD was established the same day as the ordinance was approved. After a series of mesne conveyances, Atrium obtained an option to purchase some 17.8 acres within the PUD, and thereupon applied to the Town of Rye for permission to erect an office building.

Atrium's original application to the town board requested a permit to build a two-story, multitenant office building, with a floor area of 200,000 square feet and parking for 990 cars, on the plot. After public hearings, a majority of the planning board recommended authorization for an office building of 175,000 square feet in floor area. The matter was then referred to the town board for a final determination.

Prior to final action by the town board, the chairman of the planning board received a letter from the Commissioner of the Westchester County Planning Department alerting him to the town's responsibility under the State Environmental Quality Review Act (SEQRA; ECL art 8). The commissioner recommended that the town should determine whether it is obligated to prepare an environmental impact statement (EIS), as described in ECL 8-0109 (subd 2). The town, however, declined to consider whether it had to prepare an EIS. It conceded that the project in question was such as might normally require that one be prepared. It reasoned, however, that since the PUD on which the building was to be built was established in 1973, it was exempted from preparing an EIS by ECL 8-0117 (subd 4), which sets November 1, 1978 as the effective date of the requirement to prepare an EIS for buildings such as the one under consideration. In any event, the town, on several occasions, including the time period during which it was considering Atrium's application, did carefully examine

many environmental factors, such as traffic volume, parking capacity, drainage, soil, vegetation, noise, and aesthetics.

The final determination of the town board authorized a building with 163,000 square feet of floor area and dimensions of 421 feet by 212 feet, and with parking for 815 cars. This decision was acceptable to Atrium, and it consummated its purchase of the plot.

■ Certain residents of a condominium development known as The Arbors, located adjacent to the site of the proposed office building and part of the same PUD, which residents were members of the Rye Town/King Civic Association, thereupon brought the instant proceeding pursuant to CPLR article 78. They sought to set aside the construction permit granted to Atrium on two grounds: the failure of the town to adhere to the mandates of SEQRA, and the failure of the town to properly apply its zoning ordinance. Special Term dismissed the petition, setting forth its reasons in a lengthy decision. In essence, it held that although the "grandfather" provisions of ECL 8-0117 did not exempt the town from preparing an EIS in this case, this violation of SEQRA was excusable, inasmuch as "substantial, not strict compliance with SEQRA is required" and the town had "closely examined the environmental impact factors" without an EIS. The court also found that the town had properly applied its zoning ordinance. We now reverse, on the ground that the town's failure to prepare an EIS was not excusable.

SEQRA was originally enacted in 1975 (L 1975, ch 612). Its stated purpose was to "encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and enhance human and community resources; and to enrich the understanding of the ecological systems, natural, human and community resources important to the people of the state" (ECL 8-0101). The Legislature stated its intent that "the protection and enhancement of the environment, human and community resources shall be given appropriate weight with social and economic considerations in public policy" (ECL 8-0103,

subd 7). The central practical means set forth by the act for the implementation of these policies included the requirement of ECL 8-0109 (subd 2), that all agencies (within the meaning of which term the Town Board of the Town of Rye is included [see ECL 8-0105, subds 2, 3]) cause to be prepared an EIS with respect to any action (within the meaning of which term the proposed office building is included [see ECL 8-0105, subd 4, par (i)]) they "propose or approve which may have a significant effect on the environment." The EIS is to contain eight enumerated items of information, intended to focus on possible adverse effects on the environment which might result from the action and how to eliminate or minimize such effects, as well as such other information as may be required by the relevant guidelines. ECL 8-0109 (subd 4) requires an agency to determine, as early as possible, whether an EIS need be prepared for a given action. Among other provisions of SEQRA are a provision directing the Commissioner of Environmental Conservation to adopt rules implementing the provisions of the act (ECL 8-0113) and a provision for phased implementation thereof (ECL 8-0117).

SEQRA itself provides few guidelines as to which types of actions "may have a significant effect on the environment" so as to require the preparation of an EIS. But regulations prepared pursuant to ECL 8-0113 (subd 2, pars [b], [c]) do provide guidance to agencies in identifying such actions. Certain actions are defined by the regulations as "Type I actions", and actions falling within the definition of Type I actions are declared to be "more likely to require the preparation of EIS's than those not so listed" (6 NYCRR 617.12 [a]). Among those actions defined to be Type I actions are actions which involve the construction of a new nonresidential facility and which involve either the physical alteration of 10 acres (6 NYCRR 617.12 [b][6][i]), or a facility with more than 100,000 square feet of gross floor area constructed in a town with a population of 150,000 or less (6 NYCRR 617.12 [b][6][iv]). It is undisputed that on both of these grounds, the building involved herein qualifies as a Type I action, and hence is likely to require an EIS.

Two reasons have been advanced as to why the possibility of having to prepare an EIS need not have been considered, despite the Type I status of the proposed office building: the exclusion of this action by the "grandfather" provision of SEQRA, ECL 8-0117 (relied on by the town) and the town's substantial compliance with the spirit, if not the letter, of SEQRA (relied on by Special Term). We hold that neither of these reasons excuses the town from literal compliance with SEQRA.

The proposed office building is not a direct undertaking by any State or local agency, and will not receive funding or any special entitlement from any government or political subdivision of the State; therefore, pursuant to ECL 8-0117 (subd 4), the EIS requirement with respect to it became effective on November 1, 1978. The town originally concluded that since the PUD in which the office building would stand was established in 1973, it was thus exempted from the requirement of preparing an EIS. This argument was rejected by Special Term and we concur with that portion of its decision. The Legislature provided (L 1977, ch 252, § 14, subd [b]) that it would be the date of the "final approval" of the action which would be used to determine if the action was excluded by section 8-0117. "Final approval", in turn, was defined as "an action in the nature of an approval * * * by the appropriate local body such as a legislative body * * * or planning board" (see *H.O.M.E.S. v New York State Urban Dev. Corp.*, 69 AD2d 222, 230). The date of final approval herein was October 4, 1979, the date the project was authorized by the town board. Even if the earlier date of June 27, 1979, the date of approval by the planning board, is deemed to be the date of final approval (and this would not be proper, for the planning board's approval can hardly be called "final" when it was modified by the town board), it is seen that this project is not exempted by section 8-0117. Such a holding is in accordance with the aims of the statute, because the environmental impact of a given action cannot reasonably be evaluated until the final form of the action has been determined and approved. Therefore, although the designation of a PUD is a final legislative action (see *Todd Mart v Town*

*Bd. of Town of Webster*, 49 AD2d 12), the State Legislature has declared that the date of such designation shall not be relevant for purposes of ECL 8-0117.

■ Given that the action in question is subject to SEQRA, we may now reach what we perceive to be the central issue in this appeal, one which is apparently a question of first impression in this State. Did the Town of Rye discharge its duties under SEQRA by carrying out extensive environmental review procedures in harmony with the spirit of SEQRA, although admittedly failing to adhere to the literal requirements of the act?

Environmental factors, such as the impact of the proposed building and of other developments within the PUD on drainage, soil, vegetation, noise, lighting, aesthetics, traffic volume, and parking capacity, were frequently considered by the planning board and town board over the period from 1973, when the PUD was designated, to 1979, when the site plan in question was approved. This consideration took the form of, for instance, obtaining recommendations from a planning expert and holding public hearings addressed, *inter alia*, to environmental concerns. Accordingly, this case is clearly distinguishable from *H.O.M.E.S. v New York State Urban Dev. Corp.* (69 AD2d 222, *supra*), in which UDC failed to take a "hard look" at environmental concerns before proceeding with the construction of a domed athletic stadium.

But SEQRA is not so easily satisfied. The regulations make it quite plain that "[n]o agency involved in an action shall carry out, fund or approve the action until it has complied with the provisions of SEQR. No agency shall issue a decision on an action that it knows any other agency has determined may have a significant effect on the environment, until a final EIS has been filed" (6 NYCRR 617.3 [a]). The Legislature itself has declared its intent that "*to the fullest extent possible* the policies, statutes, regulations, and ordinances of the state and its political subdivisions should be interpreted and administered in accordance with the policies set forth in this article" (ECL 8-0103, subd 6; emphasis supplied). We read these provisions to mandate literal compliance with SEQRA; substantial com-

pliance with the "spirit" of the act does not constitute adherence to its policies "to the fullest extent possible".

Our conclusion is supported by the interpretation given by one Federal court to the requirement of section 4332 (subd [2], par [C]) of title 42 of the United States Code, that a statement similar to the EIS contemplated by New York law be prepared in connection with Federal proposals "significantly affecting the quality of the human environment". In *Grazing Fields Farm v Goldschmidt* (626 F2d 1068), the First Circuit Court of Appeals held that the statute is not satisfied when the pertinent environmental information can be found only in an administrative record. The court required that a formal EIS conforming to the statutory requirements be prepared.

Furthermore, there are sound policy considerations supporting our decision. We think that it would be unwise to permit local agencies to substitute substantial compliance with the SEQRA for literal compliance therewith, thereby inevitably giving rise to numerous lawsuits challenging the sufficiency of the agencies' environment-safeguarding procedures. Uniform and literal enforcement of the provisions of SEQRA would render environmental review more objective, standardized, and consistent, and would be more certain to promote the policies of the Legislature with respect to this fundamental concern of society.

Accordingly, we hold that mere substantial compliance with SEQRA does not suffice to discharge an agency's responsibility thereunder. We further note at this point that it is far from clear that the actions of the town board herein constituted *substantial* compliance with SEQRA. The act requires more than careful consideration of the environmental impacts of a proposed project. It requires consideration of such alternatives to various aspects of the project as might result in amelioration of environmental problems caused thereby (see ECL 8-0109, subd 2, pars [d], [f]), and it is not clear that the town board gave sufficient consideration to this matter. Equally important, moreover, is the fact that an EIS is meant to be more than a mere disclosure device. Its purpose is, *inter alia*, "to inform the public and other public agencies as early as possible about proposed ac-

tions that may significantly affect the quality of the environment, and to solicit comments which will assist the agency in the decision making process in determining the environmental consequences of the proposed action" (ECL 8-0109, subd 4). The EIS must be "made available to the public prior to acting on the proposal which is the subject of the environmental impact statement" (ECL 8-0109, subd 6). In other words, it is an " 'alarm bell' whose purpose is to alert responsible public officials to environmental changes before they have reached ecological points of no return" *(Matter of Town of Henrietta v Department of Environmental Conservation of State of N. Y.*, 76 AD2d 215, 220; see, also, *Matter of Tuxedo Conservation & Taxpayers Assn. v Town Bd. of Town of Tuxedo*, 96 Misc 2d 1). There is no indication that the town took any steps towards drawing on the reservoir of public information and expertise which SEQRA intends to tap.

█ We need not determine whether the town's actions amounted to substantial compliance with the act, for we have held that it is literal compliance which is required. At this point, however, one further point remains to be made on this subject. Since the town originally concluded that the act did not apply to this matter in the first instance, the ordinary course of action for this court to take would be to remand this matter to the town for an initial determination as to whether an EIS is required (ECL 8-0109, subd 4). If the town then decided to issue a negative declaration (that is, a declaration that the project would not have a significant impact on the environment, and hence did not require an EIS), this decision would then be reviewable by this court in an article 78 proceeding (see *Matter of Kravetz v Plenge*, 102 Misc 2d 622; cf. *People ex rel. Desiderio v Conolly*, 238 NY 326). However, we believe that in this case it would be appropriate to deviate somewhat from this procedure. The record contains sufficient information to enable this court to conclude, as a matter of law, that the proposed office building may have a significant effect on the environment. Accordingly, we direct the Town of Rye to cause to be prepared an environmental impact statement relative to the office building proposed to be built by Atrium.

■ We now turn our attention to the Town of Rye's zoning ordinance, the construction of which has been the subject of considerable controversy during this proceeding. Section 66-7 E (subd [2], par [d], cl [2]) provides that one permissible use of land within a PUD shall be "Professional or business office and research laboratory type uses as permitted in the OB-1 district, not to exceed two (2) stories or thirty-five (35) feet in height, whichever is less, *or* not to have a floor area ratio which exceeds one hundred forty-five thousandths (.145). Should the entire office and research laboratory area be placed under long-term lease to, or the ownership of, a single corporate tenant, the floor area ratio may be increased one hundred ninety thousands (.190), provided that there is reasonable evidence that the traffic in the vicinity of the site can be adequately controlled" (emphasis supplied). "Floor area ratio" is defined by section 66-2 of the ordinance as: "The ratio of the aggregate floor area of a building, exclusive of cellar and basement areas used only for storage or services incidental to the operation or maintenance of the building, to the net site area of the lot on which the building is located."

"[S]tatutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction" (McKinney's Cons Laws of NY, Book 1, Statutes, § 94, p 188). Accordingly, we read the italicized "or" in the first excerpt to be a disjunctive conjunction, so that in order to satisfy the ordinance, a building need *either* (1) be no more than two stories and no more than 35 feet high, *or* (2) have a floor area ratio not exceeding .145. Since the proposed building satisfies the first clause, it satisfies this portion of the ordinance. We do not believe that by this interpretation, the ordinance would permit an infinitely large two-story building, irrespective of floor area ratio; other provisions of the ordinance dealing with building, parking, and setback preclude such an application thereof.

The second quoted sentence from section 66-7 E refers to an "increase" in the floor area ratio of .190. The concept of "increase" presupposes a prior, lower quantity. Therefore, despite the fact that this paragraph of section 66-7 E

is written as two seperate sentences, we read its second sentence to be merely an additional provision relating to floor area ratio, the second option in the first sentence. But since, as we have stated, the proposed office building satisfies the first option in the first sentence, the computation of floor area ratio is altogether unnecessary. In sum, then, the proposed office building satisfies the zoning ordinance in question.

However, for the reasons stated above, the Town of Rye has failed to comply with the obligations imposed upon it by SEQRA. This matter is remitted to the town board for the preparation of an environmental impact statement and such further proceedings, consistent with SEQRA, as it deems appropriate.

MOLLEN, P. J., HOPKINS and TITONE, JJ., concur.

Judgment of the Supreme Court, Westchester County, dated December 5, 1980, reversed, on the law, without costs or disbursements, and petition granted to the extent that the determination of the town board is annulled and the matter is remitted to the board for further proceedings consistent with the opinion herein.

Appeals from two orders of the same court, dated December 5, 1980 and January 5, 1981, respectively, dismissed, without costs or disbursements.