In the Matter of NIAGARA RECYCLING, INC., et al., Respondents, v TOWN BOARD OF THE TOWN OF NIAGARA et al., Appellants.

Fourth Department, November 13, 1981

**APPEARANCES OF COUNSEL**

*Robert P. Merino (Rita Hager* of counsel), for appellants.

*Duke, Holzman, Yaeger & Radlin (Emanuel Duke* of counsel), for respondents.

**OPINION OF THE COURT**

HANCOCK, JR., J.

Was the enactment by the Town of Niagara of a local law to regulate the siting and operation of waste disposal and management facilities an action requiring the filing of an environmental impact statement (EIS) under the State Environmental Quality Review Act (SEQRA)? We must

decide this question in the town's appeal from a judgment (108 Misc 2d 277) in a CPLR article 78 proceeding invalidating Local Law No. 8, 1980, of the Town of Niagara entitled: "Solid Waste Management Facility, Incineration, Recycling, and Landfills Law of the Town of Niagara." The town board passed the local law without preparing and filing an EIS after filing a determination of nonsignificance (negative declaration)[1] pursuant to 6 NYCRR 617.10 (b) stating, among other things, that the legislation would cause none of the adverse effects illustrated by the criteria in 6 NYCRR 617.11.[2] Relying on our decisions in *Matter of Town of Henrietta v Department of Environmental Conservation of State of N. Y.* (76 AD2d 215, 226) and *H.O.M.E.S. v New York State Urban Dev. Corp.* (69 AD2d 222), on two decisions at nisi prius, *Bliek v Town of Webster* (104 Misc 2d 852) and *Matter of Tuxedo Conservation & Taxpayers Assn. v Town Bd. of Town of Tuxedo* (96 Misc 2d 1, affd 69 AD2d 320), and on its interpretation of SEQRA (ECL art 8) and the implementing regulations adopted thereunder (6 NYCRR Part 617), Special Term held (108 Misc 2d 277, 280, *supra)* that the adoption of the legislation "must be deemed to have such 'significant environmental effect' as to have required an EIS" under ECL 8-0109. It rejected the town's chief argument: viz., that no EIS was required because the local law is general legislation establishing conditions and criteria for the granting of siting permits for waste disposal facilities which neither implements nor authorizes any project or program and that, therefore, its enactment could not be an action having any effect on the environment. For reasons hereinafter stated, we are of the opinion that the filing of the negative declaration was proper, that the preparation and filing of an EIS was not

---

1. The judgment invalidates the determination of nonsignificance as well as Local Law No. 8.

2. The determination of nonsignificance was approved by the town board on October 28, 1980. The supervisor was authorized to forward the notice of determination to the appropriate agencies, and the town clerk was directed to post and publish the notice, which provided that the town board would accept comments on the determination until November 20, 1980. At the November 11, 1980 town board meeting, Supervisor Richards explained that November 20, 1980 had been set as the cutoff date for the public comment period and that inasmuch as all those desiring to be heard on the proposed local law had been heard and there were no further comments, the public hearing was adjourned until November 25, 1980. At the November 25, 1980 meeting, a further hearing with respect to the negative declaration was held at which petitioners were represented and voiced objections. Following the hearing, the town board adopted Local Law No. 8, 1980.

necessary and that the judgment should, therefore, be reversed.

Petitioners Newco Waste Systems, Inc., and Cecos International, Inc., maintain extensive commercial facilities in the Town of Niagara as sanitary landfill areas and for operations in connection with scrap metal recycling and the treatment and disposal of hazardous industrial wastes for which they hold valid operating permits issued by the Department of Environmental Conservation pursuant to ECL article 27 (tit 7) and 6 NYCRR Part 360. The operations are conducted on lands leased from petitioners Niagara Recycling, Inc., and W.L.R. Chemical Waste Realty. (For a more detailed explanation of petitioners' operations and of the provisions of Local Law No. 8 see *Niagara Recycling v Town of Niagara,* 83 AD2d 316, decided herewith.)

Local Law No. 8 was unanimously adopted by the town board on November 25, 1980. Its declared purpose is to protect the inhabitants of the town through the exercise of its police power from the adverse effects of facilities for waste disposal and management. To that end, the legislation establishes a comprehensive administrative framework for the licensing and regulating of various types of solid and industrial waste facilities within the town. Permits are required for the continued operation of and the enlargement or modification of existing facilities as well as for the approval of new facilities. The permit application procedures require, among other things, the submission of detailed engineering and technical information and the payment of an application fee of $500. The town board is given the discretion to appoint an on-site monitoring agent and to require an applicant to post various bonds and to obtain liability insurance in amounts satisfactory to the town. Before a permit is issued, the application must be approved by several town officials, the applicant must have complied with SEQRA,[3] and a public hearing must be held.

We note preliminarily that respondents, as well as petitioners, have proceeded on the unquestioned premise that the enactment of Local Law No. 8 comprises an "action" as

---

3. Local Law No. 8 expressly incorporates all relevant sections of ECL article 27 together with 6 NYCRR Part 360.

defined in ECL 8-0105 (subd 4) and 6 NYCRR 617.2 (b) which would require the town to "determine whether the actions they directly undertake, fund or approve may have a significant effect on the environment" (6 NYCRR 617.1 [c];[4] cf. *Matter of Rye Town/King Civic Assn. v Town of Rye,* 82 AD2d 474, holding that an amendment of a zoning ordinance to provide for "Planned Unit Development" districts was an "action" requiring the filing of an environmental impact statement). The town concluded (and, indeed, conceded in its brief and during the argument) that although the legislation authorizes no project or activity, it nevertheless constitutes one of the Type I actions listed under 6 NYCRR 617.12 which are more likely to require the preparation of an EIS. Accordingly, the town board directed the completion of environmental assessment forms (EAF's) by various town officials in accordance with 6 NYCRR 617.6 (b), designated itself as the lead agency pursuant to 6 NYCRR 617.6 (c) and approved and published its determination of nonsignificance (negative declaration) in accordance with 6 NYCRR 617.10. In view of the posture in which this case is presented, we do not reach the underlying question of whether the Legislature intended a local law of the type before us to be an action requiring compliance with SEQRA and a determination of environmental significance as a condition precedent to its enactment.

We turn then to the precise question presented: assuming the local law to be an action of Type I, was the town board's determination of nonsignificance proper? The board's conclusion that the proposed action "will have no significant effect on the environment" is based primarily

4. An argument can be made based upon the language of the statute and the regulations that an "action" within the purview of SEQRA must entail the approval of or commitment to a definite project or course of physical activities which could have some discernible impact on the environment or to planning activities authorizing or committing an agency to such conduct and that Local Law No. 8, 1980, is not such an "action". (See, e.g., the reference in ECL 8-0105, subd 4, par [i], to an "action" as including: "projects or activities directly undertaken by any agency" and the description in 6 NYCRR 617.2 [b] [1] of "action" as including: "projects or physical activities, such as construction or other activities which change the use or appearance of any natural resource or structure, which: (i) are directly undertaken by an agency".)

The town board's determination that the proposed local law was a Type I action was based on 6 NYCRR 617.12 (b) (1) which lists as Type I: "the adoption of a municipality's land use plan or zoning regulations, or the adoption by any agency of a comprehensive resource management plan".

on its finding that the legislation "will not cause any of the adverse effects" described in 6 NYCRR 617.11.

In making a determination of significance under SEQRA, the responsible governmental unit (lead agency) is directed under the regulations (6 NYCRR 617.11 [a]) to compare "the impacts which may be reasonably expected to result from the proposed action" with the several criteria listed in 6 NYCRR 617.11 (a) (1)-(11). Each of these criteria is descriptive of a different category of consequence, change or effect which (if reasonably expected to result from the proposed action) is deemed to be an indication that the proposed action "may have a significant effect on the environment" (as, for example, "a substantial adverse change in existing air quality, water quality or noise levels; a substantial increase in solid waste production; a substantial increase in potential for erosion, flooding or drainage problems", 6 NYCRR 617.11 [a] [1]). In our opinion, the town board as lead agency here properly concluded that the proposed action, legislation of a regulatory nature which does not authorize or implement any activity or project, could not have an impact of the sort exemplified by the criteria in 6 NYCRR 617.11. Moreover, the local law imposes conditions and permit requirements for conducting environmentally related activities in addition to those already in force and thus, its effect if anything would necessarily be beneficial rather than detrimental to the environment.

It is beyond dispute, as pointed out by Special Term and as emphasized by petitioners, that legislative actions are within the purview of SEQRA (see, e.g., *Matter of Rye Town/King Civic Assn. v Town of Rye, supra; Matter of Tuxedo Conservation & Taxpayers Assn. v Town Bd. of Town of Tuxedo,* 96 Misc 2d 1, affd 69 AD2d 320, *supra,* in which the town board gave legislative approval to a special permit for a 3,900 unit planned development; *Bliek v Town of Webster,* 104 Misc 2d 852, *supra,* involving a proposed amendment to the zoning ordinance to permit an enclosed shopping center). Indeed, it is apparent from a review of the listed Type I actions considered "more likely to require the preparation of EIS's than those not so listed" (6 NYCRR 617.12) that many would entail legislation (e.g.,

"the adoption of a municipality's land use plan or zoning regulations"; "authorizing industrial or commercial uses within a residential or agricultural district"; legislation "authorizing residential uses within an agricultural district"). The obvious difference here is that the legislation does not authorize any program or activity. On the contrary, it purports to establish requirements and conditions beyond those in existence which must be met by persons seeking approval for waste disposal and management operations before those activities will be permitted in the town. There is nothing in the proposed legislation that commits the town board to approve any application made under the local law or to follow any course of future decisions (6 NYCRR 617.2 [b] [2]). Thus, there is no basis for Special Term's statement (108 Misc 2d 277, 280, *supra*) that as a result of the local law's adoption, additional or further waste disposal and management activities beyond those now in existence in the town and permitted by the DEC will be "likely to be undertaken"[5] (6 NYCRR 617.11 [b] [2]).

We are mindful of the rules that an action taken under 6 NYCRR Part 617 requires literal compliance with SEQRA (see *Matter of Rye Town/King Civic Assn. v Town of Rye*, 82 AD2d 474, *supra*) and that a determination pursuant to 6 NYCRR 617.11 must be based on a "hard look" at potential environmental consequences (see *H.O.M.E.S. v New York State Urban Dev. Corp.*, 69 AD2d 222, 232, *supra*). Nevertheless, we find that the town board's determination of nonsignificance should not be set aside. The precise question before the board was whether "the impacts which may be reasonably expected to result from the proposed action" may have a significant effect on the environment. The answer required a careful analysis of the local law in the light of SEQRA and the implementing regulations and in particular a comparison with the criteria set forth in 6 NYCRR 617.11 (a) (1)-(11). For reasons stated above, we think the board's determination was in all respects correct. There is nothing in the record suggesting that the town board did not give the required "hard look" or that a longer or more detailed study of the proposed legislation was

5. On the contrary, Special Term's finding that more waste disposal and management operations are likely to be undertaken within the town seems at odds with the position taken by petitioners. (See footnote 6, *infra.*)

necessary or would have led to a different result. We find no support for petitioners' contentions that the board should have weighed the wide range of economic and other considerations enumerated in the petition[6] beyond those bearing upon the reasonably anticipated environmental impact from the proposed action (i.e., the enactment of the local law). To construe SEQRA as requiring the consideration of such factors as a condition precedent to the enactment by a town board of legislation of the type in question would, in our opinion, amount to a curtailment of the powers granted by the Legislature to local governments to adopt and amend local laws relating to their property, affairs or governments (Municipal Home Rule Law, § 10, subd 1, par [i]) including the specific power to adopt local laws pertaining to solid waste management and resource recovery facilities not inconsistent with ECL article 27 (tit 7) or any regulation adopted thereunder (see ECL 27-0711).

Inasmuch as petitioners raise issues involving environmental concerns in addition to economic concerns, they have standing to maintain this action (see *Matter of Policemen's Benevolent Assn. of Westchester County v Board of Trustees of Vil. of Croton-on-Hudson,* 21 AD2d 693, 694; *Bliek v Town of Webster,* 104 Misc 2d 852, 858-859, *supra).*

The judgment should be reversed and the petition dismissed.

DILLON, P. J., CALLAHAN, DOERR and SCHNEPP, JJ., concur.

Judgment unanimously reversed, on the law, without costs, and petition dismissed.

---

6. Petitioners contend the board should have considered such factors as:

"Whether the regulatory scheme which Local Law No. 8 seeks to establish is compatible and consistent with the existing network of federal and state laws, rules and regulations governing waste treatment and disposal.

"Whether the duplicative and burdensome requirements of the ordinance will effectively impede or eliminate the construction, operation and availability of state and federally licensed facilities of Petitioners and others.

"Whether the increased cost of waste disposal to Petitioners' customers necessitated by passing on the substantial cost to Petitioners of complying with the duplicative administrative burden of Local Law No. 8 will have an adverse impact on local business and industry and thereby on the socio-economic climate of the area which will outweigh any real benefits to be derived from Local Law No. 8."