In the Matter of PEOPLE FOR WESTPRIDE, INC., et al., Respondents, v BOARD OF ESTIMATE OF THE CITY OF NEW YORK et al., Appellants, and BRODCOM WEST DEVELOPMENT COMPANY et al., Intervenors-Appellants, et al., Intervenors-Respondents.

First Department, April 16, 1991

### APPEARANCES OF COUNSEL

*Mitchell S. Bernard* of counsel *(Peter R. Paden* and *J. Kevin Healy* with him on the brief; *Teitelbaum, Hiller, Rodman, Paden & Hibsher, P. C.,* and *Natural Resources Defense Council,* attorneys), for respondents.

*Alan G. Krams* of counsel *(Leonard J. Koerner* and *Fay Leoussis* with him on the brief; *Doron Gopstein,* attorney), for appellants.

*Russel H. Beatie, Jr.,* of counsel *(Paul D. Selver, Daniel A. Osborn, Marion M. Mullen* and *Stephen W. Clark* with him on the brief; *Brown & Wood,* attorneys), for intervenors-appellants.

### OPINION OF THE COURT

KUPFERMAN, J.

The resolutions in issue amended the text of various sections of the New York City Zoning Resolution, viz., sections 12-10 and 74-74 concerning large-scale commercial, manufacturing and mixed-use developments in certain commercial and manufacturing districts and sections 22-40, 32-44, 42-46 and 74-68 concerning developments within or over railroad or transit rights-of-way or yards.

Prior to their adoption, the Departments of City Planning and Environmental Protection, as the designated permanent lead agencies under the City Environmental Quality Review procedures (CEQR), issued a statement of no significant effect, dated September 11, 1989, which, based upon an environmental assessment contained in a project data statement (PDS), dated August 9, 1989 and prepared by the Zoning Study Group of the Department of City Planning, found that the proposed amendments would not result in any significant adverse air quality or noise impacts on the existing environment and that no other significant effects on the environment which would require an environmental impact statement (EIS) were foreseeable.

The proposed amendments were then referred to the city's 59 community boards and five borough boards for their comments and a public hearing was held at which no speakers

appeared. Petitioner, People for Westpride, Inc., submitted written comments in which it alleged that the amendments were designed to accommodate the pending Trump City and Manhattan West projects. Petitioner alleged that either the PDS or the negative declaration should have made mention of the fact that consideration of such projects would be made under the allegedly more relaxed standards of the large-scale development revisions.

These concerns were addressed by the Planning Commission in its report, dated December 27, 1989, which stated that although it firmly believed that some of the findings required by the proposed large-scale development amendment were at least as environmentally sensitive as those of the current text, if not more so, it nevertheless modified the proposed text changes to include, verbatim, the findings required to be made in the original text. The Commission then found that the proposed text changes, as amended in response to comments received from various community boards as well as People for Westpride, would have no significant effect on the environment. The Commission's reports were then forwarded to the Board of Estimate, which, after a public hearing at which People for Westpride was heard, adopted the proposed text changes by a 6 to 5 vote.

Petitioners, who include the owners of more than 20% of the land adjacent to the old Pennsylvania Railroad yards on Manhattan's upper West Side, allege that the text amendments violated the requirements of the State Environmental Quality Review Act, ECL article 8 (SEQRA), and the New York City Charter. They contend that such text changes altered the findings that the City Planning Commission is required to make before approving certain large-scale development projects by relaxing the environmental findings required before project approval and enlarging the lot area that certain proposed projects may include in computing floor area or bulk.

The principal focus of petitioners' complaints is the proposed Trump City project to be built on the railway yard site, a 76-acre tract running from West 59th to West 72nd Street and from West End Avenue to the Hudson River, which is described as the largest undeveloped tract of land in Manhattan. The intervenors are the developers of various other projects on the West Side who, with two exceptions, had been issued special permits under the amended provisions.

In ruling that the text changes were null and void *ab initio*,

the IAS court found that the PDS and the negative declaration demonstrated the city's failure to consider foreseeable environmental impacts, both secondary and long term. It found that the PDS listed as "not applicable" almost every space in the multipage form relating to the present environment or the proposed text changes on the environment including, *inter alia,* traffic, air quality, noise, water and sewage, energy usage and solid waste

Since respondents had constructive, if not actual, knowledge of the, as then proposed, Trump City project,* which reportedly would cast a shadow from 62nd to 87th Streets, would obstruct light and air throughout the neighborhood and would draw an additional 23,000 cars to the upper West Side, thus raising the prospect of enormous traffic congestion, and the effect of the proposed text changes in facilitating its approval, the court held that respondents failed to take the requisite "hard look" in determining whether or not such damages would be likely to have a significant adverse environmental impact.

It concluded that the lead agencies chose not to see what was there to be seen and failed to assess the reasonably foreseeable environmental consequences of the zoning changes in violation of the State and city environmental review requirements.

We disagree and, accordingly, reverse.

The adoption of the proposed text changes by the Board of Estimate is not the type of action, involving the rezoning of specific parcels, which can be characterized as the first step in a process which will culminate in the final development of a particular project. *(See, e.g., Matter of Kirk-Astor Dr. Neighborhood Assn. v Town Bd.,* 106 AD2d 868, 869, *appeal dismissed* 66 NY2d 896; *Matter of Brew v Hess,* 124 AD2d 962.) Rather, given their citywide effect, the amendments to the Zoning Resolution are more akin to the action taken in *Matter of Niagara Recycling v Town Bd.* (56 NY2d 859, *affg for reasons stated in opn by Hancock, J.* 83 AD2d 335) in that there was nothing in the proposed text changes that committed the city to approve any application made under such amendments or to follow any course of future decisions. It is undisputed that the Trump City project and any others affected by the text changes will have to undergo individual environmental reviews.

---

* We are informed that the proposed project has since been modified.

Contrary to petitioners' contention that the text changes were specifically proposed and intended to facilitate the development of the Trump City site, it is evident that the Department of City Planning had been evaluating the proposed large-scale development revisions for a number of years and that the catalyst for the railroad right-of-way changes was a proposed project to be built near Union Turnpike in Queens on a site which included a long strip of the Long Island Railroad right-of-way. It should also be noted that the amendments in issue are not entirely new zoning regulations promulgated for the first time and do not change the environmental standards which must be satisfied before any specific project is approved. Rather, they were intended to make the wording of the Zoning Resolution more explicit in order to facilitate the common understanding of applicants, reviewers and the public.

As recognized by the IAS court, the issue is not whether Trump City should or should not go forward, but rather whether respondents, in assessing the environmental impact of the proposed amendments, identified the relevant areas of environmental concern, took a " 'hard look' " at them and made a " 'reasoned elaboration' " of the basis for their determination. (*Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 416-417, quoting from *Aldrich v Pattison,* 107 AD2d 258, 265; *Coalition for Responsible Planning v Koch,* 148 AD2d 230, 233.)

The determination to be reviewed is not the negative declaration of the designated permanent lead agencies, but the action of the Board of Estimate itself, the governmental entity principally responsible for approving the proposed action. (*See, Matter of Coca-Cola Bottling Co. v Board of Estimate,* 72 NY2d 674, 680.) The record reflects that the proposed amendments and their environmental effect, if any, received the requisite "hard look" throughout the review process.

Given the limited scope of judicial review of a lead agency's SEQRA determination (*see, Akpan v Koch,* 75 NY2d 561, 570), it cannot be said that the Board of Estimate's determination was affected by an error of law or was arbitrary and capricious or an abuse of its discretion.

In view of the foregoing, it is unnecessary to consider the intervenors' contention that permits already approved should not have to comply with new factors.

Accordingly, the judgment of the Supreme Court, New York

County (Ira Gammerman, J.), entered December 19, 1990, which, *inter alia,* granted the petition and annulled two zoning resolutions (Calendar Nos. 78 and 79) adopted by the Board of Estimate on February 22, 1990, should be reversed, on the law, and the petition should be denied and the proceeding dismissed, without costs. The appeal from the resettled judgment entered by the same court on January 22, 1991, which granted reargument but adhered to the court's prior decision except as it applied to two nonappealing intervenors, should be dismissed as academic in light of the foregoing decision, without costs.

SULLIVAN, J. P., ROSENBERGER, WALLACH and SMITH, JJ., concur.

Judgment of the Supreme Court, New York County, entered December 19, 1990, unanimously reversed, on the law, the petition denied and the proceeding dismissed, without costs. The appeal from the resettled judgment entered by the same court on January 22, 1991, is dismissed as academic in light of the foregoing decision, without costs.