■ In the Matter of GERTRUDE SOULE et al., Appellants, v TOWN OF COLONIE et al., Respondents. — Appeal from a judgment of the Supreme Court at Special Term (Conway, J.), entered May 13, 1983 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to annul respondents' determinations approving and funding the construction of a professional baseball stadium. Petitioners consist of the eight surviving members of a religious sect known as the "Shakers". Two of their number are officers of various umbrella organizations governing the sect and controlling all of its property. In addition, these two officers, together with three men, are trustees of the Shaker Central Trust Fund. Petitioners commenced this CPLR article 78 proceeding for an order (a) annulling the determinations and actions of respondents Town of Colonie and County of Albany regarding the development of a professional baseball stadium on a site northwest of the intersection of county route 157 and Albany Shaker Road in the Town of Colonie; (b) requiring respondents to prepare an environmental impact statement (EIS) pursuant to article 8 of the Environmental Conservation Law and applicable regulations (6 NYCRR 617.11, 617.12, 617.13); (c) requiring respondents to inform the public of the actions taken and conduct public hearings pursuant to said statutes and regulations; and (d) awarding money damages and counsel fees pursuant to Federal law (US Code, tit 42, § 1983 *et seq.*). Special Term rejected respondents' challenge to petitioners' standing in the interests of judicial economy and, upon the merits, granted respondents' motion to dismiss the petition upon the grounds that petitioners were barred by laches and that the decisions to proceed with the project were neither arbitrary nor capricious. Special Term further rejected the contention that the town's zoning law had been violated. It is clear that petitioners raise issues involving environmental concerns, as well as an ownership interest in the property adjoining the subject

site, sufficient to qualify their standing to sue (see *Matter of Niagara Recycling v Town Bd. of Town of Niagara,* 83 AD2d 335, 341). We further agree that the proposed use of the site will not constitute a nuisance or a violation of the town's zoning law. The parcel is classified as undeveloped, a classification which allows municipal parks and athletic fields. Since the stadium is to be owned and operated by respondents, it may be deemed noncommercial (see 1 Anderson, NY Zoning Laws and Prac [2d ed], §§ 9.02-9.03, pp 425-429; § 11.05, pp 511-513). Nor is there anything in the record which would require this court to enjoin respondents' proposed activities as a nuisance (see *Copart Inds. v Consolidated Edison Co. of N. Y.,* 41 NY2d 564). However, we disagree with the conclusion reached by Special Term that the petition was barred by the doctrine of laches. While, indeed, widespread print and electronic media coverage disseminated a considerable number of news stories commencing in December, 1982, it cannot be said that the two and one-half month delay in commencing this proceeding on March 29, 1982 should be a bar, despite the fact that work and vast expenditures of both time and money were made by respondents during that period of time. The issue before this court is thus distilled to whether respondents' actions in the issuance of a "negative declaration" were arbitrary and capricious and not in compliance with the requirements of article 8 of the Environmental Conservation Law (SEQRA) and the associated regulations of the Commissioner of Environmental Conservation (6 NYCRR part 617). This court's scope of review is limited to whether the determinations of the respective legislatures of respondents County of Albany and Town of Colonie were made in accordance with proper procedures and were not arbitrary, capricious or an abuse of discretion. Within these well defined and generally accepted guidelines for appellate review, examination of the record discloses the following: On March 29, 1924, the United Society of Shakers sold approximately 773.5 acres of the 3,000 or more acres originally owned by it to one Thomas Bergan for $60,000, reserving only a parcel measuring 176 by 205 feet comprising its cemetery. The deed contained absolutely no restrictions on future use of the land. On December 22, 1928, respondent County of Albany purchased this tract from Bergan and thereafter constructed on this land, and other contiguous parcels acquired, a jail, an airport and a nursing home. During March, 1973, an irregular shaped tract comprising over 700 acres and containing some 27 original buildings constructed by the Shakers in three separate clusters was entered in the National Register of Historic Places and entitled the Watervliet Shaker Historic District. The zoning laws of respondent Town of Colonie permitted the land to be used for residential, business and commercial purposes, and a portion was designated as semipublic open land. State law does not contain injunctive power designed to preclude land use; rather, the purpose of such power is to permit the public interest to be represented by clearly stated policy with respect to land use and development. There is thus nothing to preclude owners of land from exercising their right to develop their property. Indeed, immediately across the highway and facing the cemetery plot, an extensive office building and commercial development subdivision has commenced. In late December, 1982, respondents, after considering various sites for the erection of a stadium for use by a franchise of a professional minor league baseball team, decided upon the instant location as a joint project by the town and county. An engineering and planning firm was engaged to prepare a detailed investigation and environmental assessment report, conceptual design plans, and an itemized proposed budget. The Albany County Executive submitted the environmental assessment form for study and consideration by respondents. Included in the report were letters from the Town of Colonie historian and the

president for the Shaker Heritage Society giving approval of, and support for, the proposed project. On January 10 and 13, 1983, respectively, the Albany County Legislature, as duly designated lead agency, and the Colonie Town Board, after public debate in open meetings, made their determinations that the proposed municipal sports facility would not have a significant impact upon the environment within the guidelines provided by SEQRA. Pursuant to resolutions of these two legislative bodies, bids for construction and purchase of materials were duly advertised and contracts totaling in excess of $1,000,000 were awarded in February and March. Ground-breaking ceremonies were held on February 16, 1983 and construction started the next day. Petitioners' application for a preliminary injunction was heard on March 31 and April 5, 1983. Special Term granted the application for a preliminary injunction conditioned upon an undertaking of $1,400,000, which was never posted. By judgment entered May 13, 1983, Special Term dismissed the petition seeking a permanent injunction from which judgment this appeal has been taken. Significantly, it must be noted that petitioners, having sold their property without restriction as to future use, would have neither complaint nor a cause for action were it not for the enactment of SEQRA (L 1975, ch 612, eff Sept. 1, 1976). SEQRA requires the filing of an EIS for any proposed action which "may have a significant effect on the environment" (ECL 8-0109, subd 2). To support a negative declaration that the proposed action will have no significant impact on the environment, respondents were required to take a hard look at the relevant areas of environmental concern and make a reasoned elaboration of the basis for its determination (see *H.O.M.E.S. v New York State Urban Dev. Corp.*, 69 AD2d 222, 232). This analysis requires a comparison of "the impacts which may reasonably be expected to result from the proposed action" with the several criteria listed in 6 NYCRR 617.11 (a), which serve as indicators of significant environmental effect (see *Matter of Niagara Recycling v Town Bd. of Town of Niagara*, 83 AD2d 335, 339, *supra*). Strict compliance with both the letter and spirit of SEQRA is mandated and a relatively low threshold exists for a determination that an EIS must be prepared (*Matter of Schenectady Chems. v Flacke*, 83 AD2d 460, 463; *Matter of Rye Town/King Civic Assn. v Town of Rye*, 82 AD2d 474, app dsmd 55 NY2d 747). Respondents concede that the proposed project is a "type I action" on its face (6 NYCRR 617.12 [b] [6], [9]). As such, respondents were required to make either a determination of nonsignificance (6 NYCRR 617.10 [b]) or a determination of significance (6 NYCRR 617.10 [c]), the latter indicating that an EIS will be prepared and filed by the responsible local agency (see *Devitt v Heimbach*, 58 NY2d 925, 927-928). Thus, rather than prepare an EIS in the first instance, respondents were initially required to prepare an environmental assessment form (6 NYCRR 617.6 [b]; 617.3 [d]) and make a comparison with the criteria listed under 6 NYCRR 617.11. Preparation of an EIS is required only in the event that a preliminary determination is made that a proposed action will have a significant effect on the environment. In the present case, there was before the Albany County Legislature an environmental assessment form (see 6 NYCRR 617.2 [*l*]; 617.19) and a comprehensive engineering report. Examination of these extensive and complete documents shows that each and every criterion affecting the environment was identified and remedies to mitigate any effects were described. Additionally, the proposed construction includes procedures to obviate such identified problems. Petitioners' sole remaining objection and argument is that the stadium will in some manner adversely affect and impact upon the significance of the Watervliet Shaker Historic District. The report prepared by the engineering firm specifically provided

that none of the existing Shaker ruins or structures would be disturbed. Landscaping and fencing will protect the area surrounding the project and both the cemetery and existing woodlands will remain untouched. An archeologist will be employed during construction to discover and preserve any objects uncovered on site. Finally, the existence of the facility and those attracted to it would increase both awareness of, and visitation to, the Shaker Village and cemetery. Respondents have demonstrated concern for the preservation of the former Shaker properties and indeed have provided maintenance and care to them for many years. Contrary to petitioners' arguments, we find respondents have made a thorough investigation of all of the problems involved and reasonably exercised their discretion in the determination that the proposed action would have no significant impact upon the environment (*Matter of Cohalan v Carey,* 88 AD2d 77, 79). In our view, respondents' negative declaration of environmental significance cannot be said to have been arbitrary or capricious and was the result of the required "hard look" suggested in *H.O.M.E.S. v New York State Urban Dev. Corp.* (69 AD2d 222, *supra*). When a reasonable determination is made in accordance with these criteria, it should be upheld (*Matter of Association for Dev. of Healthy Oneonta Community v Kirkpatrick,* 87 AD2d 934, 935; *Matter of Niagara Recycling v Town Bd. of Town of Niagara,* 83 AD2d 335, *supra*). Regardless of this court's personal views, we are bound by the statutes and cases to determine whether respondents have satisfied the requirements of SEQRA, and not to substitute our judgment if those requirements have been satisfied (see *Matter of Cohalan v Carey,* 88 AD2d 77, 80, *supra*). We find that this record satisfies these criteria and decline to disturb the determination. Accordingly, Special Term properly dismissed petitioners' application in this proceeding. Judgment affirmed, with costs. Mahoney, P. J., Sweeney, Casey, Mikoll and Weiss, JJ., concur.