OPINION OF THE COURT
Jones, J.
In acting on an application for State section 401 certification of a hydroelectric project as a prerequisite to the issuance of a Federal license therefor, the Commissioner of Environmental Conservation is limited to determining whether applicable water quality standards will be met and is not empowered to base his decision on a balancing of need for the project against adverse environmental impact.
This case arises out of the decision by the Power Authority of the State of New York (PASNY) to construct a pumped storage power facility in the Catskill Mountains about 40 miles southwest of Albany, near Prattsville, New York (the Prattsville Project). The project involves the pumping of water from the Schoharie Reservoir to a reservoir to be constructed at an elevation some 1,000 feet higher, there to be retained until periods of peak power demand, when the water would be returned to generate power through the authority’s turbines, then to flow by way of a tailrace back to Schoharie Reservoir, which feeds water into Esopus Creek a heavily fished, nationally known trout stream. There are conservationists (including the intervenors in the present action) who are apprehensive about the effect the project may have on the quality of water of the reservoir and the creek and on their fish population.
Because a license for such a facility was required by the Federal Power Act (US Code, tit 16, §§ 791a-828c), on May *321 26, 1977 PASNY filed an application with the Federal agency authorized to issue such licenses (the Federal Power Commission, subsequently succeeded by the Federal Energy Regulatory Commission [FERC]) for issuance of the necessary license. Inasmuch as an amendment to the Federal Water Pollution Control Act (US Code, tit 33, § 1251 et seq. [FWPCA]), effected by the enactment of section 401 (subd [a], par [1]) of the Federal Clean Water Act (US Code, tit 33, § 1341, subd [a], par [1]), prohibited the issuance of such a license for a facility which would result in a “discharge into the navigable waters” unless the State of New York either issued a certificate that the facility would comply with water quality standards adopted by the State in compliance with section 303 of FWPCA (US Code, tit 33, § 1313) or waived such certification (US Code, tit 33, § 1341, subd [a], par [1]), PASNY also applied to the State Department of Environmental Conservation (DEC, the appropriate State agency [ECL 3-0301, subd 2, par j]) for what has become known as section 401 certification. By agreement between PASNY and DEC, consideration of the State application was postponed until conclusion of hearings on the Federal, FERC application so that the record produced at those hearings would be available to DEC.
After the conclusion of extensive FERC hearings in October, 1981, hearings on PASNY’s application to DEC for section 401 certification were conducted in February and March, 1982. Introduced in evidence were portions of the FERC record together with additional direct testimony and exhibits. On April 9,1982 respondent Commissioner of Environmental Conservation denied the power authority’s application on the ground that it had failed to demonstrate that the relevant water quality standards would be met.[1] It was evident from the decision that the result was predicated solely on the finding of noncompliance with water quality standards, and that no balancing of other factors, such as general environmental impact and the policy reflected in the State’s Energy Law, had been considered.
*322 On July 6, 1982 the administrative law judge who had presided at the FERC hearings issued his initial decision which granted the FERC license for the Prattsville Project, subject to PASNY’s securing section 401 certification from DEC. The power authority then commenced the present CPLR article 78 proceeding to challenge the commissioner’s April 9, 1982 denial of such certification, in which the Catskill Center for Conservation and Development and other environmental groups, which had participated in the FERC proceedings, were permitted to intervene.
The proceeding was transferred to the Appellate Division, Third Department, which, by the order now before us,[2] annulled the determination of the commissioner and remitted the matter to the commissioner and the department for further proceedings. In its decision the court observed that, although FERC (in compliance with what the court found was a mandate of the Federal Power Act) had engaged in a meticulous balancing of all relevant factors (including future power demand and supply, alternate sources of power, and the public interest in preserving rivers, fish and wilderness for recreational purposes) in determining to issue a license for the Prattsville Project, the State commissioner in denying section 401 certification had undertaken no similar balancing of the need for the project in order to meet State energy requirements against its environmental impact.
The court acknowledged the commissioner’s position that the only issue to be considered by him in passing on an application for section 401 certification was whether the proposed facility would comply with applicable water quality standards, but rejected that position in reliance on the requirement, which it found in the State Energy Law, that all State agencies conduct their affairs “so as to conform to the state energy policy expressed in this chapter” (Energy Law, § 3-103) and on its conclusion that the Prattsville Project is the only project that can meet needs described in the State energy master plan adopted on March 25, 1982 pursuant to authority conferred by the Energy Law (§ 3-101, subds 1, 7). Stating that “a careful weighing of the *323 environmental impact in light of the over-all public interest in the matter [i.e., ‘the public interest with respect to any energy project that meets the requirements of the State’s long-range plan’]” was a necessary component of action on PASNY’s certification application, and remarking that “[s]uch considerations were exhaustively reviewed by the presiding administrative law judge for the FERC”, the Appellate Division remitted the matter to the commissioner and the department, with the observation that the court perceived “no need for further proceedings under ECL article 8 in view of the proceedings before FERC and the contents and findings of its order and decision of July 6, 1982”. (Matter of Power Auth. v Flacke, 94 AD2d 69, 78.)
An appeal from the order of the Appellate Division has been taken to our court by the intervenors pursuant to leave granted by us under CPLR 5602 (subd [a], par 2). That section authorizes our court to grant leave to appeal from a nonfinal order of the Appellate Division in a proceeding instituted by or against one or more public officers or a board, commission or other body of public officers when, following remittal by that order to the public officer or body, the officer or body will be called on to act in an adjudicatory capacity and will thus be unable, for lack of aggrievement by its own action, to take an appeal from its determination on remittal for the purpose of obtaining a review of the prior nonfinal order of the Appellate Division (Matter of F. J. Zeronda, Inc. v Town Bd., 37 NY2d 198). As we noted in Zeronda, the statute accords its benefit to every party to the proceeding if any one party comes within its ambit (37 NY2d 198, 201, n; cf. Matter of Queens Farms v Gerace, 60 NY2d 555). So here, the inability of respondent commissioner, after disposition on remittal by the Appellate Division of PASNY’s application for section 401 certification, to obtain a review of the Appellate Division’s order returning the matter to him by means of an appeal from his subsequent determination activates our power to grant leave at the request of the intervenors. That power was not diminished by the fact that the intervenors — although not the commissioner — would be able to appeal from the commissioner’s disposition after remittal and thus obtain a review of the intermediate order. Although *324 the intervenors might have chosen to pursue such an appeal, they would be under no obligation to do so. We also observe that, the appeal having been taken by the intervenors with our permission, the commissioner and the Department of Environmental Conservation now join the intervenors in urging reversal of the determination at the Appellate Division.
We reverse the order of the Appellate Division and remit the case to it for consideration of issues raised by PASNY in this proceeding, other than its contention that the commissioner erred in not considering energy and general environmental factors as well as conformity to water quality standards in making his decision on PAS-NY’s application. Unless the resolution of another issue posed becomes dispositive, such consideration will include address to the question whether the commissioner’s determination of nonconformity to applicable water quality standards is supported by substantial evidence — the question normally posed by a challenge on the merits to an administrative determination made after an evidentiary hearing (CPLR 7803, subd 4).
In reaching the result we do we have no need to determine whether, as the intervenors assert, the Appellate Division was effectively mandating the commissioner to accept the conclusion of the FERC administrative law judge that a balancing of interests established that the project should be approved and thereby left nothing open to the commissioner on remittal, or whether, as PASNY asserts, the court did no more than require a balancing, allowing a broad exercise of discretion by the commissioner in determining how and to what extent to take into consideration the various factors and interests.
The outcome of this appeal has been preordained by our decision in Matter of de Rham v Diamond (32 NY2d 34), a case which involved the very issue on which the Appellate Division annulled the commissioner’s action in the present case — i.e., the scope and breadth of the commissioner’s inquiry in passing on an application for the water quality certification required by FWPCA as a prerequisite to Federal licensing of certain hydroelectric power projects. The language of Chief Judge Fuld, speaking of the extent of *325 the authority of the commissioner in determining whether to issue the certification of reasonable assurance that a proposed project would not violate applicable water quality standards, required by then subdivision (b) of section 21 of FWPCA (predecessor to present § 401), is conclusive:
“Congress, by the Federal Power Act (U.S. Code, tit. 16, § 792 et seq.), has vested the Federal Power Commission with broad responsibility for the development of national policies in the area of electric power, granting it sweeping powers and a specific planning responsibility with respect to the regulation and licensing of hydroelectric facilities affecting the navigable waters of the United States. The Commission’s jurisdiction with respect to such projects preempts all State licensing and permit functions. [Footnote and authorities omitted.]
“Section 21 (subd. [b]) of the Federal Water Pollution Control Act relinquishes only one element of the otherwise exclusive jurisdiction granted the Power Commission by the Federal Power Act. It authorizes States to determine and certify only the narrow question whether there is ‘reasonable assurance’ that the construction and operation of a proposed project ‘will not violate applicable water quality standards’ of the State. That is all that section 21 (subd. [b]) did, and all that it was designed to do. Congress did not empower the States to reconsider matters, unrelated to their water quality standards, which the Power Commission has within its exclusive jurisdiction under the Federal Power Act.
“With this in mind, it is clear that the State Commissioner was required only to consider water quality standards which may be affected by discharges from Con Ed’s project into the Hudson River — in other words, to ascertain whether the project would offend against the applicable regulations (6 NYCRR 701.3) governing ‘Class B’ waters, the classification of the River at Cornwall (6 NYCRR 858.4). It is equally clear that the Commissioner has neither the authority nor the duty to delve into the many other issues — which had been investigated and decided by the Federal Power Commission in the course of the extensive proceedings it had conducted”. (32 NY2d 34, 44-45.)
*326 PASNY asserts however that the de Rahm decision does not take into account the Energy Law and the State’s energy planning process, which did not exist in their present form when fhat case was decided. It contends that as a State officer the commissioner is now bound, particularly by the mandate in section 3-103 of the statute that State agencies conduct their affairs “so as to conform to the state energy policy”, to take into account the prevalent energy program — specifically the current State energy master plan, which it is said would be advanced by construction of the Prattsville Project.
Although professing to acknowledge “the preemptive nature of the FERC’s jurisdiction over hydroelectric projects under the Federal Power Act”, which pre-emptive nature PASNY describes as “clear and strong”, it nevertheless tenders an imaginative, but unpersuasive, argument that, in determining whether to issue section 401 certification as to compliance with water quality standards, the commissioner must use as a component of his considerations the State’s energy needs as manifested in the energy master plan.
The argument of course runs counter to the acknowledgment of Federal pre-emption, overlooks the fact that preemption could not have been overcome by the énactment of the State Energy Law, and disregards the very limited nature of the activity left by FWPCA to State action in section 401 certification. The certification referred to in the Federal Clean Water Act, insofar as relevant to the Prattsville Project, is simply of compliance with section 303 of the Federal statute (US Code, tit 33, § 1313), which provides for either State-adopted, Federally approved water quality standards or the promulgation of standards by the Federal Environmental Protection Agency. In the case of New York State, the standards adopted by DEC and Federally approved establish use classifications of waters within the State with specific, individual standards, relating to such things as turbidity and temperature change, assigned to the various classifications (e.g., 6 NYCRR 701.4, 704.2 [b]). The section 401 certification process is accomplished by a determination that a proposed project will meet the particular water quality standards for the *327 applicable classification. To extend that process, as the order of the Appellate Division would do, to consideration of countervailing energy and environmental interests with the possibility of issuance of section 401 certification despite noncompliance with water quality standards on the basis of overriding energy needs would be to countenance both a failure by the commissioner to perform the function reserved to him under FWPCA and an intrusion by him in the area of responsibility pre-empted for the Federal agency.[3]
The Appellate Division erred in remitting PASNY’s application for section 401 certification to respondent commissioner who had neither authority nor responsibility to engage in balancing economic, energy, environmental or other factors or to reflect public interest other than as it is set forth in the State water quality standards. It also erred in denying intervenors’ motion to strike from the appendix on appeal the initial decision of the FERC administrative law judge issued July 6, 1982, which was issued subsequent to the commissioner’s denial of section 401 certification on April 9, 1982 and which was irrelevant to the propriety of that denial.
Because there remain other objections in point of law to the commissioner’s action raised by PASNY in this proceeding as well as its challenge to his decision as unsupported by substantial evidence, none of which has been passed on by the Appellate Division, we remit the matter to that court for its further consideration, rejecting the request by the intervenors that we finally rule on each of the remaining objections. It is not appropriate for this *328 court to undertake the initial judicial review of the determination of respondent commissioner.
The order of the Appellate Division should be reversed, with costs to the intervenors, and the case remitted to that court for further consideration in conformity with this opinion.
Chief Judge Cooke and Judges Jasen, Wachtler, Meyer, Simons and Kaye concur.
Order reversed, with costs, and matter remitted to the Appellate Division, Third Department, for further proceedings in accordance with the opinion herein.

. The denial extended also to an alternative request by PASNY for modification of the water quality standards found applicable and to a request for a State pollutant discharge elimination system permit sought in connection with the section 401 certification.

. Related litigation, involving the power of DEC to have issued a declaratory ruling concerning the Prattsville Project, was previously before us (Matter of Power Auth. v New York State Dept. of Environmental Conservation, 58 NY2d 427).

. It does not follow, however, from the inability of the commissioner to consider more than compliance with water quality standards in acting on an application for section 401 certification that all other factors are necessarily disregarded or beyond reach at the State level. To the contrary, public interests of broad scope are implicated both in the classification of State waters, which is required to be done “in accordance with considerations of best usage in the interest of the public” (ECL 17-0301, subd 2), and in the fixing of standards of purity within classifications, which are to be established consistent with a variety of interests — “public health and public enjoyment thereof, the propagation and protection of fish and wild life, including birds, mammals and other terrestrial and aquatic life, and the industrial development of the state” (ECL 17-0101). Indeed, under section 303 (subd [c], par [2]) of the FWPCA the use and value of State waters for industrial purposes is one of the factors which must be taken into consideration in the adoption of State water quality standards if they are to receive Federal approval (US Code, tit 33, § 1313, subd [c], par [2]).