OPINION OF THE COURT
John G. Connor, J.
The United Petroleum Association, Inc., herein moves under CPLR article 78 seeking this court to declare 6 NYCRR subpart 225-2 to be a nullity. On July 29,1,983 the respondent, the Department of Environmental Conservation (D.E.C.) promulgated certain rules and regulations pertaining to the authorization and use of waste fuel oil throughout the State, to become effective on January 29, 1983.
Pursuant to CPLR article 78 and ECL 19-0511 (subd 2), petitioner claims that 6 NYCRR subpart 225-2 dealing with restrictive use of waste oil was made contrary to and in violation of the State Environmental Quality Review Act (SEQRA; ECL art 8) and further contends such rules are unlawful, arbitrary and capricious. Respondent’s position is that such rules and regulations are duly authorized *965 by “declaring negatively” the necessity for an environmental impact statement (E.I.S.), thereby eliminating this requirement.
Petitioner represents 30 fuel oil reprocessors which collect used crankcase oil deposited at local gas stations throughout the State. They in turn reprocess the contaminated oil and blend it with new “virgin oil”. After the waste oil has been reprocessed, it is distributed as fuel oil to heat apartment buildings throughout the State.
Under the new regulations, strict limits are made on properties of waste oil used to fuel apartment buildings. Gas station owners are exempt from the prohibition and may burn the used crankcase oil as collected. Petitioner contends that 6 NYCRR subpart 225-2 regulates primarily the use of apartment building users who are petitioner’s main consumers.
Statistically, less than 1% of all lead contaminants originate from domestic heating as compared to 99% resulting from the exhausts of motor vehicles. Nearly 100 million gallons of lubricating oil are sold each year in New York State and nearly 50 million gallons of used oil are collectible for recycling.
In June, 1983, D.E.C. stated, “There is little doubt that such a prohibition [Subpart 225-2] would lead to the widespread dumping of waste crankcase oil”.
Petitioner protests such restrictions will force the reprocessors out of business. The question is where will the majority of waste crankcase oil be dumped. Respondent’s response is that such a situation is only hypothetical and assumes that illegal dumping will occur.
The issue herein presented is whether D.E.C. is required first to prepare an E.I.S. before it can promulgate its rules and regulations as to the use and prohibition of reprocessed oil; or as respondent contends, that a “negative declaration” to the effect that no significant impact will result meets the requirements of ECL article 8.
ECL 8-103 (subd 6) provides: “It is the intent of the legislature that to the fullest extent possible the policies, statutes, regulations, and ordinances of the state and its political subdivisions should be interpreted and administered in accordance with the policies set forth in this *966 article.” ECL 8-103 (subd 7) further provides that appropriate weight should be given to “social and economic considerations”.
ECL 8-0109 (subd 8) specifically sets forth that the agency “shall make an explicit finding that the requirements of this section have been met and that consistent with social, economic and other essential considerations, to the maximum extent practicable, adverse environmental effects revealed in the environmental impact statement process will be minimized or avoided.” In the opinion of this court, there is no exception as to applicability of ECL article 8 dispensing with the requirement to prepare an E.I.S. where it legislates on environmental rules and regulations (see ECL 8-0103, subd 6; 8-0105, subd 4, par [ii]). To hold to the contrary would in effect render ECL article 8 meaningless, especially where it legislates on rules and regulations which will have a significant impact on the environment.
Respondent has cited legionary cases to substantiate its broad authority to legislate and implement the provisions of ECL article 19. The issue herein presented is not whether D.E.C. has such authority to legislate rules and regulations, rather it is whether the delegation so to legislate is totally unharnessed. ECL article 8 and 6 NYCRR 617.11 (a) (1) limit such authority and compel the requirement of an E.I.S.
Petitioner alludes to inconsistent positions taken by D.E.C. Originally, D.E.C. had given some consideration to whether space heaters used by gasoline station owners might contribute to the air pollution problem being legislated. Subsequently, this factor was eliminated and D.E.C. affirmatively states that they did not, since the consumption of leaded gasoline was declining. This raises the question as to why the decline in use of leaded gasoline would also not be applicable to the waste oil reprocessors. There appears also to be an inconsistency in the proposed regulation which controls the use of the reprocessed oil blended with new oil, while not curtailing the use by gasoline station operators burning untreated crankcase oil.
*967 Under ECL article 8 respondent is required to take a “hard look” and must examine “to the fullest extent possible” the effect of its regulations and control of waste oil (ECL 8-0103, subd 6). Although respondent has declared widespread dumping will occur, there is no E.I.S. as to the impact this would have on the environment.
In H. O. M. E. S. v New York State Urban Dev. Corp. (69 AD2d 222), the court pointed out (at p 229) that the State Legislature intended: “that all regulatory agencies conduct their affairs with an awareness that they are stewards of the air, water, land and living resources, and that they have an obligation to protect the environment for the use and enjoyment of this and all future generations (ECL 8-0103, subd 8; 8-0109, subd 1) * * * The primary method of achieving the intended surveillance and protection is the requirement of the preparation and submission of an environmental impact statement for any action, including that requiring agency approval if it may have a significant effect on the environment (ECL 8-0109, subd 2 et seq.).”
The test set forth in H. O. M. E. S. is a “ ‘relatively low threshold for impact statements’ * * * and ‘such a statement should be required where the action may fairly be said to have a potentially significant adverse effect’ (Hanly v Kleindienst, 471 F2d 823, 831).” (H.O.M.E.S. v New York State Urban Dev. Corp., 69 AD2d, at p 232.)
In the instant case the petitioner has demonstrated at least a “potentially significant adverse effect” as to the subsequent result in the elimination of approximately 50 million gallons of used crankcase oil. Merely issuing a “negative declaration” avoids the underlying purpose of ECL article 8 and is arbitrary and capricious.
In Matter of Town of Henrietta v Department of Environmental Conservation (76 AD2d 215, 221), the court emphasized the necessity “to take into account all environmental consequences”, and “‘any adverse environmental effects which cannot be avoided should the proposal be implemented’ (ECL 8-0109, subd 2, par [c])”. The court reiterates (at p 223), “SEQRA mandates a rather finely tuned and systematic balancing analysis in every instance * * * ‘to the fullest extent possible’ (ECL 8-0103, subd 6). This language does not make the act’s procedural requirements *968 somehow ‘discretionary’. Indeed, the requirement of environmental consideration ‘to the fullest extent possible’ sets a high standard which must be enforced by the reviewing courts (cf. Calvert Cliffs’ Coordinating Committee v Atomic Energy Comm. [449 F2d 1109] * * * Failure to employ this balancing analysis may be grounds for nullifying an administrative decision (cf. City of Carmel-by-the-Sea v Board of Supervisors of Monterey County, 71 Cal App 3d 84, supra).”
In reference to the test imposed on respondent, literal compliance is required. (See Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay, 88 AD2d 484, 490.)
Petitioner raises the necessity of respondent (D.E.C.) to implement and foster the energy policies of this State (Energy Law, § 3-101). Its aim is to reduce the long-range plan in the consumption of imported oil. In Matter of Power Auth. v Flacke (94 AD2d 69, 77, revd on other grounds sub nom. Power Auth. v Williams, 60 NY2d 315), the court noted the State’s policy: “ ‘Every agency of the state shall conduct its affairs so as to conform to the state energy policy expressed in this chapter’ ”.
Respondent has wide discretion to attack such problems in piecemeal fashion and these questions, air, land and water pollution, are within the domain of legislative and executive discretion (see Oriental Blvd. Co. v Heller, 27 NY2d 212). But where there are related problems and a choice to alleviate air pollution as opposed to land and water pollution such agency must at least take a “hard look” on the impact such regulation may ultimately effect.
By reason thereof 6 NYCRR subpart 225-2 is rendered a nullity and this matter is remanded to respondent for further consideration in compliance with the Environmental Quality Review Act. Such findings and declarations should be made in an environmental impact statement as to the effects the regulation of waste fuel oil will have on the environment.