In the Matter of UNITED PETROLEUM ASSOCIATION, INC., Respondent, v HENRY G. WILLIAMS, as Commissioner of the New York State Department of Environmental Conservation, Appellant.

Third Department, July 12, 1984

APPEARANCES OF COUNSEL

*Robert Abrams*, Attorney-General (*Francis J. Keehan, Peter H. Schiff* and *James A. Sevinsky* of counsel), for appellant.

*LeBoeuf, Lamb, Leiby & MacRae* (*G. S. Peter Bergen* and *Molly S. Boast* of counsel), for respondent.

*Roland & Fogel* (*Usher Fogel* of counsel), for Empire State Petroleum Association, Inc., *amicus curiae.*

CASEY, J.

Special Term erred in annulling respondent's newly promulgated regulations concerning waste fuel (6 NYCRR subpart 225-2) for failure to prepare an environmental impact statement. The negative declaration, finding no significant environmental effect, issued after public hearings, eliminated the need for an environmental impact statement.

In August, 1982, the Department of Environmental Conservation proposed new regulations concerning the burning of used oils, waste oils and solvents in stationary combustion installations, such as apartment house furnaces and boilers. The department also issued a negative declaration, concluding that the proposal would not have a significant effect on the environment. Public hearings were held on the proposed regulations in September and October, 1982. As a result of these hearings, adoption of the regulations was deferred pending the receipt of additional information and, in March, 1983, the department issued a new set of proposed regulations, containing substantial revisions. Public hearings were held on the revised proposal in April and May, 1983. On June 20, 1983, the department issued a revised negative declaration, describing the proposal and the reasons for the finding of no significant environmental impact. Shortly thereafter, the final regulations were promulgated (6 NYCRR 225-2.1 *et seq.*) and this proceeding to annul those regulations was commenced by petitioner, a not-for-profit corporation whose members collect, reprocess and sell waste oil as fuel in the metropolitan New York area.

The regulations finally adopted by respondent consist of the revised regulations proposed in March, 1983, with several additional revisions. Among these additional revisions is an exception from the prohibition of the use of waste oil in small burners for automotive service facilities which use waste crankcase oil in small space heaters (6 NYCRR 225-2.5). As explained in the June, 1983 negative declaration, this revision was designed to avoid the dumping of waste crankcase oil by service station operators and "do-it-yourself" oil changers. Special Term viewed this

explanation as recognition of a significant environmental impact (i.e., widespread dumping of waste oil), requiring an environmental impact statement (122 Misc 2d 964). We disagree.

Although the department recognized a possible significant environmental impact due to the dumping of used crankcase oil if the automotive facilities required to collect it were prohibited from using it as fuel for their space heaters, the regulations were revised to *avoid* this possible impact.

Accordingly, as revised, the regulations do not create the significant impact recognized by the department as possible in the absence of the revision. Nor does it follow that the department's recognition of a possible significant impact from illegal dumping of waste crankcase oil if automotive facilities are not allowed to burn the used crankcase oil they collect necessarily includes a recognition that the restrictions imposed on other facilities will also result in illegal dumping of waste oil. The department found that an exception was justified only with respect to the relatively small automotive facilities and further found that such a limited exception would not adversely affect air quality. We find nothing irrational in this determination, which has support in the record.

Petitioner argues that the regulations are so restrictive that they "will disrupt and probably destroy the waste oil collection and reprocessing industry". Based upon this supposition, petitioner further argues that producers of waste oil will resort to massive illegal dumping, resulting in a substantial effect on the environment which requires preparation of an environmental impact statement. These arguments were presented at the public hearings and considered by the department. Based upon all of the evidence, the department concluded that "[c]ertain waste oil reprocessors may initially experience a constricted market for their products". To alleviate this potential problem, the regulations were revised to provide "a generous period * * * for sources to come into compliance [with the regulations]". It was further determined that the provision in the regulations allowing the burning of most waste oil if it could be shown that neither the environment nor the public health

would be endangered would "tend to expand the opportunities for waste fuel burning". Since the determination has a rational basis in the record, it cannot be disturbed and petitioner's arguments to the contrary must be rejected (see *Matter of Soule v Town of Colonie,* 95 AD2d 979, 982).

In sum, on the issue of the need for an environmental impact statement, the record demonstrates to our satisfaction that the department took the required "hard look" at the potential environmental impact (see *H.O.M.E.S. v New York State Urban Dev. Corp.,* 69 AD2d 222, 232), considered the effects which could reasonably be expected to result from the proposed action, as required by regulation (6 NYCRR 617.11 [a]), and made a "reasoned elaboration of the basis for its determination" (*Matter of Schenectady Chems. v Flacke,* 83 AD2d 460, 462). Having so concluded, our role in reviewing the determination is completed (*Matter of Soule v Town of Colonie, supra*). In the absence of a finding that the proposed action would have a significant effect on the environment, there was no need to prepare an environmental impact statement (ECL 8-0109, subd 4; see *Matter of Schweiss v Ambach,* 98 AD2d 148). Indeed, the intent of the new regulations was to benefit the environment, not harm it (see *Matter of Niagara Recycling v Town Bd.,* 83 AD2d 335, affd 56 NY2d 859).

Petitioner also contends that the regulations themselves are invalid. The department's authority to promulgate regulations for preventing, controlling or prohibiting air pollution is expressly provided by statute (ECL 19-0301), and petitioner does not challenge this statutory delegation of power. Instead, petitioner's arguments are aimed at the wisdom and practicality of several of the restrictions created by the regulations, selectively relying on certain evidence to support its claims. Our review of the record as a whole, however, reveals a rational basis for the methods employed in the regulations to deal with recognized environmental concerns arising out of the burning of waste oil. Accordingly, petitioner's contention that the regulations are invalid must be rejected (*Oriental Blvd. Co. v Heller,* 27 NY2d 212, 219, app dsmd 401 US 986).

Finally, petitioner claims that the regulations contravene the State Energy Master Plan (see L 1978, ch 707, as

amd), but in view of the statement of the State Energy Office (see Energy Law, § 5-113) that the proposed regulations would not only "deal directly with waste oil problems but do so in a balanced and effective manner", we find no merit in this claim.

The judgment of Special Term annulling the regulations in 6 NYCRR subpart 225-2 should be reversed and the petition dismissed.

MAHONEY, P. J., KANE, WEISS and MIKOLL, JJ., concur.

Judgment reversed, on the law, with costs, and petition dismissed.