■ In the Matter of SERVICE STATION DEALERS OF GREATER NEW YORK, INC., Appellant, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents, and NATURAL RESOURCES DEFENSE COUNCIL, INC., Intervenor-Respondent.—Mikoll, J. Appeal from a judgment of the Supreme Court (Hughes, J.), entered May 16, 1988 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to annul 6 NYCRR part 230.

Pursuant to the Federal Clean Air Act (42 USC § 7401 *et seq.),* the Federal Environmental Protection Agency (hereinafter EPA) established National Ambient Air Quality Standards (hereinafter NAAQS) for air pollutants which may reasonably be anticipated to endanger public health or welfare (42 USC §§ 7408, 7409). One such pollutant is ozone (40 CFR 50.9). As a result of this, each State has been required to submit for EPA review and approval a state implementation plan (hereinafter SIP) which sets forth how that State will attain, maintain and enforce the NAAQS within the State (42 USC § 7410).

This proceeding concerns New York's treatment of gasoline vapors, which are classified as volatile organic compounds or hydrocarbons. These compounds in the atmosphere react with sunlight and other pollutants to form ozone, which can produce adverse health effects. The "Stage II" system is a method designed to capture gasoline vapors which are displaced from automobile fuel tanks during vehicle fueling at service stations, return the vapors to the service station's gasoline storage tank and prevent their emission into the atmosphere.

The Clean Air Act was amended in 1977 to require that SIPs provide for attainment of NAAQS "as expeditiously as practicable", but not later than December 31, 1982 (42 USC § 7502 [a] [1]). New York, however, is designated as a State with problem air pollution areas or "nonattainment areas" (42 USC § 7501 [2]) and, consequently, was given an extension to December 1987 for attainment of the ozone NAAQS, provided it revises its SIP to indicate compliance with Part D of the Clean Air Act, which concerns plans for nonattainment areas (42 USC §§ 7501-7508).

Respondent State Department of Environmental Conserva-tion (hereinafter DEC), attempting to cure deficiencies in an earlier SIP, developed the January 1984 "Air Implementation Plan" (hereinafter the 1984 SIP) for control of hydrocarbon emissions in the metropolitan area. This 1984 SIP contained additional air pollution control measures including "Light Duty Vehicle Inspection/Maintenance" and "Stage II Gasoline Station Controls". EPA approved the 1984 SIP and published it as a final rule on June 17, 1985 (50 Fed Reg 25073 [1985]; 40 CFR 52.1670 [c] [72]; 52.1682).

DEC published a State Environmental Quality Review Act (hereinafter SEQRA) determination of nonsignificance or nega-tive declaration of environmental impact as part of proposed regulations amending 6 NYCRR part 230 implementing Stage II. The proposed regulations applied to all existing gasoline stations in the metropolitan area that pumped 250,000 gallons or more of gasoline per year, and further required compliance by January 1, 1988 at large service stations, and by January 1, 1989 at smaller stations. In December 1986, public hearings were held on the proposed regulations and the written and oral testimony presented was summarized and submitted to DEC. As a consequence of these hearings, the above compli-ance dates were changed to July 1, 1988 and July 1, 1989, respectively. The State Environmental Board approved the proposed regulations but further amended and extended the compliance dates to April 1, 1989 and April 1, 1990, respec-tively.

In January 1987, intervenor, Natural Resources Defense Council, Inc., and others instituted an action under the Clean Air Act which asserted that New York had failed to carry out four air pollution control strategies in the 1984 SIP, including Stage II. In granting the plaintiffs' motion for summary judgment, Federal District Court ordered the State to require full implementation of Stage II "as promptly as possible", but not later than July 1, 1988 at large service stations and July 1, 1989 at mid-size stations (*Natural Resources Defense Coun-cil v New York State Dept. of Envtl. Conservation*, 668 F Supp 848, 852-855).

In August 1987, EPA promulgated a notice of proposed rulemaking relating to "control of refueling emission from new motor vehicles and new motor vehicle engines", known as "onboard controls". EPA announced that those areas which had not started implementation of Stage II controls but whose submitted SIPS contained commitments to do so should pro-ceed with the implementation as an interim measure, espe-

cially in light of the fact that the proposed implementation date of nationwide onboard controls was two or more years after promulgation of EPA's final rule, for which no date has yet been set.

In October 1987, petitioner commenced the instant CPLR article 78 proceeding seeking to annul the Stage II implementing regulations of June 1987 and to require reconsideration of alternatives and the preparation of an environmental impact statement. Intervenor was allowed to participate in these proceedings. Supreme Court ruled that (1) petitioner was precluded from challenging on the merits the State's decision in the 1984 SIP to propose Stage II controls and was "limited to * * * procedural attacks" on the 6 NYCRR part 230 rule-making, (2) in view of the "EPA's history of indecision" concerning onboard controls, it was reasonable for the State to conclude that such controls were "not a viable alternative" to Stage II, (3) petitioner's other suggested "alternative", an "enhanced inspection and maintenance program", is "already provided for in the State's 1984 SIP" and, consequently, is properly described as a "companion" to Stage II, and (4) since there is no reasonable basis to find that carrying out the Stage II commitment as directed by EPA might adversely affect the environment, petitioner had "failed to make its case that respondents did not comply with [SEQRA]". This appeal ensued.

Petitioner first contends that DEC has not complied with State Administrative Procedure Act § 202-b. Particularly, petitioner claims that DEC has not considered reasonable alternatives to the Stage II system and that DEC acted arbitrarily and capriciously in issuing its determination that the Stage II system regulations would not have a significant impact upon the environment. We disagree. There is no merit to petitioner's contention. DEC has substantially complied with the requirements of the State Administrative Procedure Act. We find support in the record for DEC's position that, under the State Administrative Procedure Act, there was no viable alternative to consider at the time the regulations were promulgated which would have enabled the State to meet the Clean Air Act's attainment deadlines. It was reasonable for DEC to not consider the onboard control system as a viable alternative in meeting the Federally imposed deadline because there was no final EPA rule concerning them nor was it clear that there would be one in the near future. DEC accurately stated that it does not have the power to require automobile manufacturers to install onboard gasoline vapor controls (see,

42 USC § 7543 [a]). Even if the EPA adopted a final rule on this control system, it would not go into effect until two or more model years after the final rule is adopted; the process of older cars without the controls being replaced with the newer models would take many years to accomplish.

Concerning the enhanced inspection and maintenance program, it is evident from the record that this was not a reasonable alternative for DEC. The 1984 SIP's ozone control measures were both a Stage II system and a "Light Duty Vehicle Inspection and Maintenance Program". Both EPA and petitioner's expert agree that this enhanced inspection and maintenance program is essentially identical with the program suggested by petitioner. When the 1984 SIP was approved in June 1985, it was indicated that implementation of both programs was necessary to achieve the reduction of air pollutants as "expeditiously as practicable" (42 USC § 7502 [a] [2]). The two programs were properly considered to be companions rather than alternatives, especially since DEC is prohibited from changing its Federally approved SIP without proceeding through a formal revision and still meet the deadlines *(see,* 42 USC § 7410 [a] [3] [A]; § 7502; *Friends of the Earth v Carey,* 535 F2d 165, 169).

The record also demonstrates that DEC complied with State Administrative Procedure Act § 202-b requirements in its "Regulatory Flexibility Analysis". This analysis complied with State Administrative Procedure Act § 202-b and considered the regulations' impact on small businesses. It applied the regulations only to large, mid-size, new or substantially modified stations exempting service stations which distribute less than 250,000 gallons of gasoline annually (6 NYCRR 230.2 [c]). Significantly, DEC rejected a suggestion to broaden their scope and include all stations which pump more than 120,000 gallons of gasoline annually.

Petitioner next argues that DEC did not comply with SEQRA requirements. Petitioner claims that DEC acted arbitrarily and capriciously in issuing a determination that the Stage II regulations would not adversely affect the environment, that the negative declaration was irrational because DEC failed to consider reasonable alternatives to Stage II such as an enhanced onboard control system or enhanced inspection system, and that New York's adoption of Stage II regulations could lead the EPA to reject adoption of onboard controls. We disagree.

The record demonstrates that early in the planning of the

regulations, DEC addressed the environmental impact of the regulations pursuant to its obligations under SEQRA. DEC prepared a short environmental assessment form which described the proposed regulations and concluded that they will have a positive effect on both air quality and energy conservation. The assessment form further states that Stage II was designed to improve environmental quality and will have no significant adverse impact on the environment. In March 1986, DEC issued a negative declaration/notice of nonsignificance regarding the proposed regulations. The conclusions of this declaration were the same as those in the short assessment form.

We find no merit to petitioner's argument that DEC issued its negative declaration without considering whether the installation of Stage II in New York might cause the EPA not to enact nationwide onboard controls. The record shows that EPA directed those states already committed to implementing Stage II to go forward, even while EPA was considering the onboard control system. Thus, DEC complied with the requirements of SEQRA in evaluating the impact of Stage II from the beginning of the project. It has no duty to discuss speculative possibilities (see, Natural Resources Defense Council v Morton, 458 F2d 827, 837-838). Further, petitioner points to no reasonable evidence in the record showing that DEC's determination would harm, rather than benefit, the environment (see, Matter of United Petroleum Assn. v Williams, 102 AD2d 491, affd 65 NY2d 708; H.O.M.E.S. v New York State Urban Dev. Corp., 69 AD2d 222).

Finally, Supreme Court properly declined to consider petitioner's substantive attack on the decision to require Stage II controls. Stage II was incorporated into the New York plan in January 1984 and approved by the EPA in June 1985. Once a plan is "adopted by a state and approved by the EPA, [it] becomes controlling and must be carried out by the state" (Friends of the Earth v Carey, 535 F2d 165, 169, supra). Under the Clean Air Act, any challenge to the approval of such plans must be brought within 60 days of the date of EPA promulgation (42 USC § 7607 [b] [1]). Moreover, petitioner admitted in Federal court that the "state court proceedings do not challenge the adoption of the SIP, state limitation plan. That occurred many years ago. The state court proceedings challenge the promulgation of certain rules and regulations which became effective * * * June of 1987, which implement the SIP". Accordingly, Supreme Court's judgment dismissing the petition in this article 78 proceeding must be affirmed.

Judgment affirmed, without costs. Mahoney, P. J., Kane, Weiss, Mikoll and Harvey, JJ., concur.