In the Matter of NIAGARA MOHAWK POWER CORPORATION, Respondent, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Appellants.

Third Department, January 7, 1993

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General,* Albany *(Kathleen Liston Morrison, Peter H. Schiff, Val E. Washington* and *Maureen F. Leary* of counsel), for appellants.

*Brian K. Billinson,* Syracuse, and *Hiscock & Barclay,* Albany *(Timothy P. Sheehan* of counsel), for respondent.

**OPINION OF THE COURT**

YESAWICH JR., J.

Petitioner, a private, investor-owned utility company which owns and operates hydroelectric facilities throughout the State, recently applied to the Federal Energy Regulatory Commission (hereinafter FERC) for licenses enabling it to construct several new facilities and to perform dam repair or reconstruction work on existing ones, and anticipates filing similar additional applications in the near future. Section 401 of the Federal Clean Water Act (33 USC § 1341) provides that when such proposed construction or repair will result in any discharge into navigable waters, the applicant must obtain, from the State in which the discharge originates, a certification that the discharge meets certain Federal and State water quality requirements *(see,* 33 USC § 1341 [a]). In response to insistence by respondent Department of Environmental Conservation (hereinafter DEC) that the projects proposed by petitioner must satisfy many different provisions of the ECL (all of which ostensibly, directly or indirectly, affect water quality), including the regulatory requirements of the State Environmental Quality Review Act (ECL art 8; hereinafter SEQRA) before it will issue the requisite certification, peti-

tioner applied to DEC for a declaratory ruling that the Federal Power Act (hereinafter FPA; 16 USC § 791a *et seq.)* preempts DEC's authority to require compliance with these State laws. On August 27, 1990, DEC ruled that by enacting section 401 of the Clean Water Act, Congress intended the States to have authority to exact compliance with all State laws which bear on water quality before granting a certification, or to condition that certification upon such compliance.

Petitioner thereupon instituted this combined CPLR article 78 proceeding and declaratory judgment action, seeking annulment of DEC's declaratory ruling and a declaration that the section 401 certification process only allows DEC, with respect to State law, to consider the water quality standards set forth in 6 NYCRR parts 701-704. Respondents answered and moved to dismiss. Supreme Court determined that Federal preemption precluded DEC from requiring a project subject to section 401 certification to undergo the sweeping review sought by DEC. Respondents appeal.

There is no dispute that the FPA establishes a comprehensive scheme pursuant to which all hydroelectric projects are to be licensed and regulated by FERC, and that this legislation generally preempts the application of State law, including licensing and permitting requirements, to such projects *(see, First Iowa Coop. v Power Commn.,* 328 US 152, 167-168, 181; *Matter of deRham v Diamond,* 32 NY2d 34, 44). However, the Clean Water Act contains a narrow exception to FERC's exclusive jurisdiction, insofar as it empowers States to certify whether a project complies with its water quality requirements and makes such a State certification necessary before a license may be granted *(see,* 33 USC § 1341 [a]). At issue here is the breadth of a State's power engendered by this exception.

Recently, we held that DEC's authority in this area, which has been likened to a veto power, encompassed the right to request certain information from the applicant *(Matter of Long Lake Energy Corp. v New York State Dept. of Envtl. Conservation,* 164 AD2d 396, 401-403); significantly, the information sought bore on aspects of water quality, such as turbidity and temperature change, that were addressed in the regulations, found at 6 NYCRR parts 701-704,* which DEC promulgated in accordance with the Clean Water Act. In so

---

* The water quality standards set forth in 6 NYCRR parts 701-704 relate to taste, color, odor, turbidity, suspended and dissolved solids, pH, dissolved oxygen, coliform, thermal discharges, and other chemicals and substances.

doing, we explicitly recognized the "very limited nature of the activity left by 33 USC § 1341 [Clean Water Act § 401] to State action", and noted that " 'the standards adopted by [DEC] and Federally approved * * * relating to such things as *turbidity and temperature change* " were the basis for DEC's request for information, including plans for the proposed facility *(supra,* at 402-403 [emphasis in original]). We are now asked by respondents to declare that other statutory and regulatory provisions, more indirectly related to water quality, may be used as a basis for review under section 401. Because we believe that to do so would extend DEC's "veto power" over FERC-regulated projects well beyond that intended by Congress, we affirm the judgment of Supreme Court.

Respondents have attempted to justify DEC's consideration of various sections of the ECL, including ECL 15-0501 (disturbance of stream beds), 15-0503 (dam construction), 15-0507 (dam safety), 15-0801 *et seq.* (reservoir releases), 15-2701 *et seq.* (wild, scenic, and recreational rivers), article 24 (freshwater wetlands), article 11 (fish and wildlife), and article 8 (environmental quality review), as part of the certification process on the ground that the language of section 401 (d) of the Clean Water Act (33 USC § 1341 [d]) allows State certification to be conditioned on compliance with "any other appropriate requirement of State law"; but this merely begs the question as to which laws are "appropriate". Respondents argue that any provision protective of water quality, in any manner, may be applied. To support their contention, respondents submit a letter from the Federal Environmental Protection Agency (hereinafter EPA), the agency charged with administering the Clean Water Act, to FERC wherein the EPA observes that "water quality involves far more than just addressing water chemistry". However, the EPA acknowledges that State water quality standards, adopted in accordance with the guidelines of section 303 of the Clean Water Act (33 USC § 1313) (i.e., use designations and quality standards to preserve the designated uses), "form the backbone" of the certification process set forth in section 401 of the Clean Water Act (33 USC § 1341), and goes on to note that these water quality standards are not limited to "chemical-specific criteria", but rather that States are encouraged to adopt both narrative and numerical criteria, and will shortly be required to include biological criteria. Thus, even the EPA recognizes that the proper mechanism by which a State may apply water quality provisions to a project licensed under the FPA is by adopting standards under sec-

tion 303, which, if Federally approved, may then be enforced as part of the certification procedure (see also, Matter of Power Auth. v Williams, 60 NY2d 315, 327, n 3).

When the actual provisions of the ECL which DEC seeks to invoke are examined, it is clear that they address the very matters that have been reserved by the FPA for determination at the Federal level—dam safety, general balancing of economic and other concerns, the effect on wildlife, recreational opportunities and the like. The 1986 amendments to the FPA, which require FERC to consider fish and wildlife habitats, recreational opportunities and environmental quality in general as part of the licensing process, indicate that Congress intended such matters to remain within the Federal domain, as factors to be balanced against other concerns, such as the power and development purposes of the proposed facility for which a license is sought (see, 16 USC § 797 [e]). It is also noteworthy that Congress has provided that FERC must consider any comprehensive plan prepared by a State, and must solicit and entertain recommendations of State agencies regarding flood control, recreation, navigation, and fish or wildlife concerns (see, 16 USC § 803); indeed, a consultation procedure exists which insures that States will have an opportunity to have input in this regard (see, 18 CFR 4.38). This is a further indication that environmental and conservation factors of concern to a State are to be weighed at the Federal level; to allow them to serve as a predicate for a State "veto" of the project is indefensible for it would effectively undermine the intent of Congress (see, Calvert Cliffs' Coordinating Comm. v United States Atomic Energy Commn., 449 F2d 1109, 1123).

WEISS, P. J., MERCURE, CREW III and CASEY, JJ., concur.

Ordered that the judgment is affirmed, without costs.